93 P.3d 195 (2004)
122 Wash.App. 84
Shanon DEER, Appellant,
v.
DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
No. 30548-8-II.
Court of Appeals of Washington, Division 2.
June 29, 2004.
Reconsideration Denied August 4, 2004.
Gary Alan Preble, Attorney at Law, Olympia, WA, for Appellant.
Stephen H. Hassett, Office of the Attorney General, Olympia, WA, for Respondent.
*196 SEINFELD, J.P.T.[1]
The trial court dismissed Shanon Deer's action under chapter 42.17 RCW, the Public Disclosure Act (PDA), for an order requiring Department of Social and Health Services (DSHS) to produce certain dependency records and to pay sanctions for its untimely production of the requested documents. Because chapter 13.50 RCW, which governs the disclosure of juvenile dependency records in the custody of state agencies applies, and because juvenile dependency records are exempt from PDA requirements, we affirm.

FACTS
In 2001, DSHS[2] filed a dependency action in juvenile court regarding Shanon Deer's three children. DSHS then placed the children in foster care.[3] The court appointed an attorney to represent Deer.
Deer claims that she met with Ron Wingard, Child Protective Services (CPS) supervisor, on November 27, 2001, and that she then orally requested CPS records regarding herself and her three children.[4] When she had not received the records by April or May 2002, she made a second oral request, this time of DSHS caseworker Shari Rodarte. Rodarte told Deer to ask her attorney for the records.[5]
On September 16, 2002, Deer delivered to DSHS a written request for the "complete and total records permitted by law" of her three children "and any thing [sic] else associated with them or [Deer]." Clerk's Papers (CP) at 9. The request was on a DSHS form entitled "REQUEST FOR DISCLOSURE OF DSHS RECORDS." CP at 9.
DSHS responded in writing about four days later. The response stated that DSHS was processing Deer's request immediately and would contact her when the requested materials were available. But Deer heard nothing from DSHS and, after twenty days, she called DSHS, which transferred her to the voice mail of someone named Steve. She left a message but received no response to this call or to the later two messages she left on Rodarte's voice mail.
On November 21, 2002, Deer sent Rodarte a certified letter complaining about her numerous unanswered requests and again asked for "ALL records on myself and my children." CP at 14. On December 8, Rodarte called Deer and told her that it would be cost prohibitive to obtain these records; Rodarte again suggested that Deer obtain the records from her attorney.
In early 2003, Deer explained her situation to CPS caseworker Kevin Kukas. Although Kukas indicated that he would look into it, he took no action, later explaining that he failed to act because he did not realize that Deer's request had been pending for so long.
In February 2003, Deer retained a new attorney who entered a notice of appearance in the dependency action and, in April, filed a show cause action against DSHS, alleging that it had violated the PDA. In response, DSHS provided Deer's new counsel with a copy of what it claims was "the entire child welfare case files, minus some privileged material." Br. of Respondent at 6.
Deer stated that this production contained 1161 pages and was approximately 15 to 20 percent more than DSHS had provided to her first attorney, but that she believed some items were still missing and that she was *197 prejudiced by DSHS's delay in providing her records. Thus, she continued to pursue the show cause action.
The State then responded by arguing that the PDA does not apply to the records that Deer requested. The trial court agreed and denied Deer's motion, ruling that "(1) RCW 13.50 is the sole and exclusive means to access child welfare records, under the circumstances of this case. (2) Public Disclosure Act (RCW 42.17) does not apply and is exempted by child welfare records (RCW 13.50), (3) DSHS provided records in timely manner." CP at 163.
Deer appeals each of these rulings.

ANALYSIS
The sole question before us is whether a person denied access to DSHS records in which they or their children are named can use the processes and obtain the relief set forth in the PDA. Because, as we explain below, the PDA does not provide an applicable remedy, we do not address sanctions under the PDA for noncompliance. We note, however, that we do not condone DSHS's failure to respond to Deer's requests, its failure to provide accurate information as to the correct procedure to obtain records, or what appears from the record to be its callous disregard for the dilemma of a mother enmeshed in DSHS's intricate protocols.
We resolve the question before us by interpreting the relevant statutes. Statutory interpretation is a question of law. State, Dept. of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). We review the PDA and DSHS's action under RCW 42.17.250-.320, de novo. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994) (hereinafter PAWS).
We are obliged to give effect to the Legislature's intent and to do so, we begin with the plain language of the statute. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). We determine legislative intent of an unambiguous statute from the language of the statute alone. Waste Mgmt. v. WUTC, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994). If the statute is ambiguous, we must construe it "so as to effectuate the legislative intent." Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).

A. "PUBLIC RECORDS" UNDER THE PDA
Because the PDA applies only to public records, we first must determine whether the DSHS records that Deer requested are "public records" within the meaning of the PDA, chapter 42.17 RCW. In analyzing this question, we construe the PDA liberally to achieve its purpose of preserving "the sovereignty of the people and the accountability of the governmental agencies that serve them." Limstrom v. Ladenburg, 136 Wash.2d 595, 607, 963 P.2d 869 (1998).
A public record "includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.17.020(36). "A document relating to a governmental function is `used' by the agency if it is applied to a given purpose or instrumental to an end or process." Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1, 138 Wash.2d 950, 959, 983 P.2d 635 (1999).
The records at issue here are those documents that DSHS prepared or retained for its use in evaluating whether Deer's children were at risk in Deer's custody and whether it should act to remove the children from her custody. Because DSHS prepared, used or retained these records for the purpose of performing its statutory mission of protecting children, the records fit the definition of public records. RCW 42.17.020(36); see Concerned Ratepayers Ass'n, 138 Wash.2d at 959, 983 P.2d 635.
Further, when DSHS adopted regulations for requests and "disclosure of public records" under the PDA, it acknowledged that at least some of the documents it holds are public records. See former Washington Administrative Code (WAC) Ch. XXX-XX-XXX (2001). These regulations state that "DSHS prepares and keeps public records that relate to the programs it administers. All records *198 DSHS uses to conduct business are public records." Former WAC 388-01-030, citing RCW 41.17.020,.260, and .300 as statutory authority. Thus, we conclude that the records Deer requested were public records.

B. RCW 13.50 Exemptions
Deer requested the records that DSHS held for purposes of the dependency proceedings. DSHS contends that the PDA does not apply to these records because chapter 13.50 RCW exempts juvenile dependency records from the PDA. The trial court agreed, as do we.
We construe exemptions under the PDA narrowly. RCW 42.17.010(11),.251, .920. "The Legislature did not intend to entrust to either agencies or judges" the power of "wielding broad and malleable exemptions." PAWS, 125 Wash.2d at 260, 884 P.2d 592. "The general purpose of the exemptions to the Act's broad mandate of disclosure is to exempt from public inspection those categories of public records most capable of causing substantial damage to the privacy rights of citizens." Limstrom, 136 Wash.2d at 607, 963 P.2d 869.
The PDA requires that each agency make all public records "available for public inspection and copying." RCW 42.17.260(1). But RCW 42.17.260 then makes an exception for records that are "within the specific exemptions" of the PDA or "other statute which exempts or prohibits disclosure of specific information or records."[6] RCW 42.17.260(1). Assuming such other statutes do not conflict with the PDA, we treat them as supplementing the PDA. PAWS, 125 Wash.2d at 261-62, 884 P.2d 592.
Chapter 13.50 RCW governs the release "of dependency records by juvenile justice or care agencies" including DSHS "and its contracting agencies." In re Dependency of J.B.S., 122 Wash.2d 131, 134, 856 P.2d 694 (1993); RCW 13.50.010(1)(a). The question here is whether chapter 13.50 RCW qualifies as an "other statute" within the meaning of RCW 42.17.260.
Chapter 13.50 RCW defines dependency records as "the official juvenile court file, the social file, and records of any other juvenile justice or care agency in the case." RCW 13.50.010(1)(c). The official juvenile court file is "the legal file of the juvenile court containing the petition or information, motions, memorandums, briefs, findings of the court, and court orders." RCW 13.50.010(1)(b). The social file is "the juvenile court file containing the records and reports of the probation counselor." RCW 13.50.010(1)(d). Thus, the records that Deer requested fit the description of "records of any other juvenile justice or care agency." RCW 13.50.010(1)(c).
This interpretation of chapter 13.50 RCW is consistent with the PDA's purpose of exempting from its purview only those "public records most capable of causing substantial damage to the privacy rights of citizens." Limstrom, 136 Wash.2d at 607, 963 P.2d 869. Chapter 13.50 RCW resolves the potential conflict between the disclosure of juvenile records and concerns for the privacy of the juvenile and of his or her family by strictly limiting the types of juvenile records that an agency may release and the parties to whom it may release them, thereby preserving "anonymity and confidentiality." In re J.B.S., 122 Wash.2d at 134, 856 P.2d 694; see also State v. J.A.B., 98 Wash.App. 662, 664, 991 P.2d 98 (2000).
Thus, chapter 13.50 RCW is an "other statute" that "exempts or prohibits" disclosure of particular documents to particular people under RCW 42.17.260. Consequently, its provisions supplement the PDA unless there is a conflict.

C. Interaction of Chapters RCW 13.50 and RCW 42.17
We next consider whether the exemptions in chapter 13.50 RCW conflict with the PDA's purpose of holding public officials and institutions accountable and providing access to public records. Because chapter 13.50 *199 RCW contains an alternative means of requesting and seeking juvenile dependency records that balances and protects the privacy needs of the juvenile and his or her family, we find no conflict.
RCW 13.50.100 contains requirements for maintaining accurate juvenile records and a process by which a person included in those records, along with treatment providers, and those "engaged in legitimate research for educational, scientific or public purposes," may obtain access. RCW 13.50.010(8). But the statute also includes numerous safeguards to protect privacy, most significantly court oversight of the release of records. RCW 13.50.010(5), (6), (8); 13.50.100(5), (6).
RCW 13.50.100 states that "[r]ecords covered by [RCW 13.50.100] shall be confidential and shall be released only pursuant to this section and RCW 13.50.010." RCW 13.50.100(2) (emphasis added). This language not only provides for a means of obtaining access to the juvenile records, it also makes clear that this method is the exclusive means of obtaining juvenile justice and care records. A parent or person included in the records who has been denied access to these records "may file a motion in juvenile court requesting access to the records." Former RCW 13.50.100(6) (2001).[7]
Moreover, RCW 13.50.010(4) requires DSHS to "implement procedures consistent with the provisions of this chapter to facilitate inquiries concerning records." Thus, chapter 13.50 RCW furthers the PDA's policy of allowing access to records held by government agencies but simultaneously protects the privacy of dependent juveniles and their families. As the PDA and chapter 13.50 RCW do not conflict, chapter 13.50 RCW supplements the PDA and provides the exclusive process for obtaining juvenile justice and care records. PAWS, 125 Wash.2d at 261-62, 884 P.2d 592 ("[t]he `other statutes' exemption incorporate[s] into the [PDA] other statutes which exempt or prohibit disclosure of specific information or records."); see also Confederated Tribes of the Chehalis Reservation v. Johnson, 135 Wash.2d 734, 748-49, 958 P.2d 260 (1998) (applying other statute exception of PDA to the State Uniform Trade Secrets Act).
Citing O'Connor v. Washington State Dep't of Soc. & Health Serv., 143 Wash.2d 895, 910, 25 P.3d 426 (2001), Deer contends that even if chapter 13.50 RCW applies and supplements the PDA, the PDA process for requesting documents is also available as an alternative method to obtain those records.
In O'Connor, a plaintiff who was suing DSHS for damages sought DSHS records. 143 Wash.2d at 899, 25 P.3d 426. The trial court quashed the request, ruling that the records were available only through a discovery request made pursuant to the civil rules of court. O'Connor, 143 Wash.2d at 899, 25 P.3d 426.
The Supreme Court reversed, holding that although the civil rules are incorporated into the "other statute" provision of RCW 42.17.260(1), the PDA also was available to obtain documents discoverable under the civil rules. O'Connor, 143 Wash.2d at 910, 25 P.3d 426. But the O'Connor court further held that civil rule limitations regarding discovery of privileged or irrelevant documents also apply to a litigant's requests for records under the PDA. 143 Wash.2d at 906, 25 P.3d 426.
O'Connor is distinguishable. It provided for PDA access only to those records that lacked special protection as "privileged." Further, in O'Connor, the State was seeking a rule that would single out one category of PDA record seekers  plaintiffs suing the State  who could not obtain records merely because of their status as plaintiffs. 143 Wash.2d at 907, 25 P.3d 426.
The situation here is very different. As Deer's counsel acknowledged at oral argument, Deer is seeking a reverse rule, one that would single out a small category of record seekers  parties named in dependency records  who could use the PDA to obtain records that would not be available to the general public.
To allow this use of the PDA in this situation would violate chapter 13.50's careful balancing of access to dependency records with protection of privacy, which is incorporated *200 into the PDA along with the text of chapter 13.50 RCW. Use of the PDA to demand protected juvenile dependency records would interfere with the orderly juvenile court review of access requests to those very sensitive documents. Further, a person dissatisfied with a court ruling regarding access has the usual appellate remedies to challenge that ruling.
In summary, we hold that chapter 13.50 RCW supplements chapter 42.17 RCW as an "other statute." Thus, the limitations in chapter 13.50 RCW on access to juvenile records and the procedures in chapter 13.50 RCW for obtaining access to those records provide an exception to the general rule that all records are open. A party denied access to juvenile records must follow the procedures set forth in chapter 13.50 RCW.

D. ATTORNEY FEES
Deer seeks attorney fees under RCW 42.17.340(4), which provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record ... shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." Because Deer has not prevailed in showing that she may bring her claim under the PDA, she is not entitled to attorney fees.
The trial court did not err in dismissing Deer's motion to show cause.
We affirm.
We concur: ARMSTRONG, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Judge Seinfeld is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).
[2] References to DSHS in this opinion include Child Protective Services (CPS) and Division of Children and Family Services (DCFS), which are departments within DSHS.
[3] The dependency proceeding regarding Deer's son was dismissed in February 2003.
[4] Wingard asserts that he has no record or recollection of this request.
[5] Deer's attorney received some records throughout the dependency proceedings. In its appellate brief, DSHS asserts that it had delivered all the case records to the attorney, but Wingard states in his declaration only that it was "normal practice to provide discovery prior to the time of a shelter care hearing to the attorney representing the parent." CP at 33. Based on our review of the appellate record, it appears that DSHS provided only court papers and updated Individual and Service and Safety Plans (IISPs) to the attorney.
[6] Former WAC 388-01-040 states that "(1) Public records kept by DSHS are available for release unless the law specifically excludes (or exempts) them. (2) For a list of public records that are excluded from public disclosure by law, see RCW 42.17.310 through RCW 42.17.31911, and other disclosure laws specific to DSHS programs."
[7] Laws of 2003, ch. 105, § 2.