[No. 36705-0-II.   Division Two.   June 30, 2009.]

*In the Matter of the Dependency of* K.B.

Joan Rioux, *Appellant,* v. The Department of Social and Health Services, *Respondent.*

---

[14] *Hutchins v. 1001 Fourth Ave. Assocs.,* 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

914

*Gary A. Preble*, for appellant.

*Robert M. McKenna, Attorney General*, and *Sara J. Vanmeter, Assistant*, for respondent.

¶1 PENOYAR, A.C.J. — Joan Rioux appeals the trial court's denial of her request for attorney fees and penalties against the Department of Social and Health Services (DSHS) for delaying production of records regarding herself and her dependent child. Rioux argues that the trial court erred by (1) failing to impose sanctions against DSHS under the Public Records Act (PRA),[1] chapter 42.56 RCW; (2) concluding that RCW 13.50.100(10) does not apply in a dependency guardianship proceeding; and (3) concluding that the civil rules of discovery are the exclusive means for seeking a remedy when DSHS fails to provide records in a dependency guardianship proceeding. We reverse the trial court's ruling that RCW 13.50.100(10) does not apply in a dependency guardianship proceeding. Because Rioux did not comply with the statute's provisions, we affirm the ruling denying her request for attorney fees, costs, and sanctions and requiring that she comply with the civil rules of discovery.

## FACTS

¶2 In June 2006, DSHS filed a guardianship petition regarding Rioux's daughter, KB. KB has been a dependent child since March 2005. After a guardianship hearing on June 29, 2006, the juvenile (trial) court entered an order appointing a dependency guardian.[2] On July 18, 2006, Rioux submitted a request for records form to DSHS, requesting "[a]ll documents and/or information whatsoever" regarding herself and her daughter.[3] Clerk's Papers at 35. She did not, however, file a request for production or request discovery of

---

[1] In 2005, the legislature renamed and recodified the public disclosure act, chapter 42.17 RCW. It is now referred to as the Public Records Act, chapter 42.56 RCW. RCW 42.56.001, .020. We use the term "PRA" throughout this opinion.

[2] Although DSHS served Rioux's attorney with the petition and notified him of the hearing, Rioux claims that she did not learn about the trial court's order until after the hearing, on July 16.

[3] Rioux claims that she orally requested records in December 2004, when her case was first transferred from her tribe to DSHS, and again in December 2005. It does not appear that these requests were documented.

these records pursuant to the civil rules. DSHS sent Rioux a letter in response, in which it acknowledged its receipt of her request but did not indicate a date by which it would provide the records.[4] Instead, it stated that it had forwarded Rioux's request to her social worker for further processing because its records indicated that her record was currently active, and that she should contact her social worker for further information about the disclosure process.

¶3 In November 2006, Rioux moved to vacate the guardianship. The trial court granted her motion and set the matter for trial on May 1-3, 2007.[5] Again, Rioux did not request discovery of DSHS records pursuant to the civil rules of discovery during this time. Not having received any records from DSHS, Rioux filed a motion in Mason County juvenile court on March 15, 2007, requesting access to records, attorney fees, and a daily fine of $100 for each day her requests were not fulfilled.[6] She also requested a separate fine for the tribal records that DSHS did not provide in response to her 2004 request. On March 21, a day before the trial court heard Rioux's motion, DSHS provided Rioux with approximately 1,600 pages of documents. DSHS concedes that it did not provide Rioux with the requested records until it received her motion.[7]

¶4 The trial court commissioner subsequently entered an order denying Rioux's requests for attorney fees and penalties in September 2007. In its order, the trial court commissioner concluded that the civil rules of discovery are

---

[4] WAC 388-01-090 requires that, within five business days after receiving a public record request, DSHS must review the public record and provide the public record or either (1) acknowledge receipt of the request and give the DSHS date for response or (2) deny the request in writing, noting the reason(s) for denial.

[5] The guardianship trial took place in May and June 2007. The trial court entered its order appointing a dependency guardian in August 2007. Rioux initially appealed the order but subsequently withdrew that appeal.

[6] RCW 13.50.100(10). We discuss this statute below.

[7] At the guardianship trial, Rioux's attorney asked her caseworker whether DSHS initially provided Rioux the records she requested. The caseworker trivialized the mistake, saying, "Nope, that was my bad, my fault, about that one." Partial Narrative Report of Proceedings at 2.

the exclusive means for seeking a remedy for DSHS's failure to provide records in a timely manner in a dependency guardianship proceeding. Rioux filed a motion to revise, which the trial court denied. Rioux now appeals.

## ANALYSIS

¶5 Rioux requests that we reverse and remand with instructions to the trial court to impose sanctions against DSHS "in costs, attorneys fees and daily fines of $100.00 for each day [it] withheld records [since she made] her first verbal request in late 2004." Appellant's Br. at 23. We deny her request because she failed to follow the rules for discovery in civil cases as RCW 13.50.100(10) requires.

I. STANDARD OF REVIEW AND LEGISLATIVE INTENT

¶6 The parties appear to disagree as to the proper standard of review in this case. DSHS initially states that the standard of review is de novo. Citing *In re Dependency of T.L.G.*, 139 Wn. App. 1, 15, 156 P.3d 222 (2007), however, it states that any decisions the trial court made regarding whether Rioux was in fact *improperly* denied access to records "are similar in nature to factual or evidentiary determinations and should be reviewed under the abuse of discretion standard." Resp't's Br. at 6. Rioux disagrees, arguing that the abuse of discretion standard is not applicable where the trial court's findings are based solely on documentary evidence.

¶7 Where, as here, the record on both trial and appeal consists of affidavits and documents, and the trial court has neither seen nor heard testimony requiring it to assess the credibility or competency of witnesses, nor had to weigh the evidence or reconcile conflicting evidence in reaching a decision, the appellate court stands in the same position as did the trial court in reviewing the record. *Spokane Police Guild v. Wash. State Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989). Because the issue in this case is one that consists solely of documentary evi-

dence, involves statutory interpretation, and requires that we determine whether the PRA or chapter 13.50 RCW applies to a particular set of facts, the standard of review is de novo.

¶8 We look to the statute's plain language in order to fulfill its obligation to give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). When a statute is ambiguous, we will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpretation. *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 434, 98 P.3d 463 (2004) (citing *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002)). A statute is ambiguous if it can be reasonably interpreted in more than one way. *Yousoufian*, 152 Wn.2d at 433-34 (quoting *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)). Moreover, "[w]hen construing a statute, the court must ascertain and give effect to the Legislature's intent." *Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 405, 842 P.2d 938 (1992). Finally, when faced with two controlling statutes, we apply the more specific. *Waste Mgmt. of Seattle, Inc.*, 123 Wn.2d at 630.

II. Obtaining Records under the PRA and Chapter 13.50 RCW

¶9 "The [PRA] requires that each agency make all public records 'available for public inspection and copying.'" *Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 90, 93 P.3d 195 (2004) (quoting former RCW 42.17-.260(1) (1997)). RCW 42.56.070(1) makes an exception for records that fall within specific exemptions in the PRA or an "other statute which exempts or prohibits disclosure of specific information or records." Because DSHS is a juvenile justice or care agency, its records are confidential and "shall be released only pursuant to [chapter 13.50 RCW]." RCW 13.50.010(1)(a), .100(2).

¶10 In *Deer*, we clarified the interaction between these two chapters. In *Deer*, DSHS filed a dependency action regarding Deer's three children. 122 Wn. App. at 86. After making two oral requests for records regarding herself and her three children, Deer submitted a written request to DSHS. *Deer*, 122 Wn. App. at 86-87. DSHS's response stated that it was processing her request and would contact her when the requested materials were available. *Deer*, 122 Wn. App. at 87. When Deer did not receive the records, she wrote a letter to a DSHS caseworker, who suggested that Deer obtain the records from her attorney. *Deer*, 122 Wn. App. at 87. Subsequently, Deer filed a show cause motion, alleging that DSHS had violated the PRA. In response, DSHS provided Deer with a copy of what it claimed was the entire child welfare case file, minus some privileged information. *Deer*, 122 Wn. App. at 88.

¶11 Believing that some items were still missing and that she was prejudiced by DSHS's delay in providing her records, Deer continued to pursue the show cause action. *Deer*, 122 Wn. App. at 88. DSHS responded by arguing that the PRA did not apply to the records that Deer had requested. *Deer*, 122 Wn. App. at 88. After the trial court denied her motion, Deer appealed. *Deer*, 122 Wn. App. at 88. The sole question before us was whether a person denied access to DSHS records in which they or their children are named can use the processes and obtain the relief set forth in the PRA. *Deer*, 122 Wn. App. at 88. Affirming the trial court, we held that chapter 13.50 RCW is an "other statute" that exempts or prohibits disclosure of particular documents to particular people under the PRA; because the PRA and chapter 13.50 RCW do not conflict, chapter 13.50 RCW supplements the PRA and provides the *exclusive* process for obtaining juvenile justice and care agency records. *Deer*, 122 Wn. App. at 92-93. Rioux agrees that chapter 13.50 RCW controls the *process* but argues that it does not control the *sanctions* that may be imposed for improper failure to disclose.

¶12 Under RCW 13.50.100(7), a juvenile, his or her parents, the juvenile's attorney, and the juvenile's

parent's attorney shall, upon request, be given access to all records and information collected or retained by a juvenile justice or care agency that pertain to the juvenile. RCW 13.50.100 contains two remedial provisions that apply when DSHS fails to provide requested records, RCW 13.50.100(8) and (10). RCW 13.50.100(8) applies only following an agency determination under RCW 13.50.100(7). Because no such agency determination occurred here, we hold that RCW 13.50.100(10) applies.

¶13 RCW 13.50.100(10) provides that "[s]*ubject to the rules of discovery in civil cases,* any party to a proceeding seeking a declaration of dependency or a termination of the parent-child relationship and any party's counsel and the guardian ad litem of any party, shall have access to the records of any natural or adoptive child of the parent." (Emphasis added.) A party denied access to records may request judicial review of the denial and, if the party prevails, she shall be awarded attorney fees, costs, and an amount not less than five dollars and not more than one hundred dollars for each day the records were wrongfully denied. RCW 13.50.100(10).

¶14 The PRA, on the other hand, provides:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4). In *Deer,* we did not address sanctions for noncompliance under the PRA because "the [PRA did] not provide an applicable remedy" in that case. 122 Wn. App. at 88. We `stated, however, that "[a] party denied access to juvenile records must follow the procedures set forth in chapter 13.50 RCW." *Deer,* 122 Wn. App. at 94.

III. APPLICATION OF RCW 13.50.100(10)

¶15 Rioux argues that sanctions for wrongful nondisclosure of DSHS records should not be limited to those permitted under chapter 13.50 RCW, but should include those allowed under the PRA. Although DSHS argued that RCW 13.50.100(10) did not apply in a dependency guardianship proceeding below, it now "concedes" that the trial court erred and agrees that this statute applies in a dependency guardianship proceeding.[8] Given that chapter 13.50 RCW governs the process by which one must *obtain* juvenile justice and care agency records, it is hard to see why the legislature would intend to excuse parties involved in dependency guardianship proceedings from the "[s]ubject to the rules of discovery in civil cases" language contained in RCW 13.50.100(10). We interpret this language to mean that requesting parties may serve DSHS with interrogatories, requests for production, subpoenas duces tecum, deposition notices, and other discovery allowed under the civil rules in order to obtain DSHS records relating to themselves and their children. *See* CR 26-37.

¶16 Although RCW 13.50.100(10) does not explicitly list dependency guardianship proceedings within its category of cases, the procedural similarities between dependency, termination, and dependency guardianship proceedings indicate that the legislature did not intend to exclude parties involved in these proceedings from requesting sanctions under this chapter.[9] Ch. 13.34 RCW. A literal construction of this subsection—one that would essentially preclude parties involved in postdependency or nontermination proceedings from requesting sanctions under either the PRA or

---

[8] Below, DSHS argued that Rioux was not entitled to a remedy under the PRA or RCW 13.50.100(10), but that even if the latter applied, Rioux failed to follow the procedures required to receive a remedy under this statute.

[9] For example, the rules of evidence apply in all three proceedings. RCW 13.34.110(1), .190, .231. The petitioner has the burden of proving petitions by a preponderance of the evidence in both dependency fact finding and dependency guardianship proceedings. RCW 13.34.110(1), .231.

this chapter—would arguably yield "unlikely, absurd or strained consequences." *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

¶17 Additionally, Rioux's argument that the PRA and RCW 13.50.100(10) conflict is without merit. The PRA provides that in the event of conflict between its provisions and any other act, the PRA's provisions shall govern. RCW 42.56.030. RCW 13.50.100, however, virtually mirrors the PRA—both provide for attorney fees, costs, and other sanctions when DSHS wrongfully denies a records request. *See* RCW 42.56.550(4). RCW 13.50.100(10) requires, however, that parties seeking access to records comply with the civil rules of discovery. As DSHS notes, "Because [this subsection] applies when there is already pending litigation, it makes sense that the parties would be expected to follow the civil rules when making discovery requests." Resp't's Br. at 20. Finally, for chapter 13.50 RCW to require a trial court to apply PRA sanctions in a dependency guardianship proceeding would seemingly render RCW 13.50.100(10) superfluous. If the legislature had intended to provide PRA sanctions in cases in which DSHS wrongfully denies access to chapter 13.50 RCW records, then it would have specified this in RCW 13.50.100(10). Additionally, the provisions of a specific statute prevail over those of a more general statute when the specific statute is passed subsequent to the general statute. *Muije v. Dep't of Soc. & Health Servs.*, 97 Wn.2d 451, 453, 645 P.2d 1086 (1982). The legislature passed chapter 13.50 RCW, which specifically addresses the process, including sanctions, for obtaining juvenile justice and care agency records, after the PRA.[10]

IV. AVAILABILITY OF SANCTIONS TO RIOUX

¶18 DSHS argues that because Rioux "failed to follow the rules of civil discovery . . . she was not entitled to

---

[10] Rioux responds that such a reading "fails to recognize that the PRA already takes into consideration RCW 13.50.100(10) as an 'other statute.'" Reply Br. at 9. Therefore, "the concept of [the more specific statute] prevailing makes little sense in this context." Reply Br. at 9. This argument is unpersuasive.

attorney's fees or sanctions under either RCW 13.50.100 or the PRA." Resp't's Br. at 16. Despite its applicability, Rioux is not entitled to sanctions under RCW 13.50.100(10) in this case. Although DSHS concedes that it did not provide Rioux records until she filed a motion requesting access under RCW 13.50.100(8), the record indicates that neither Rioux nor her attorney made any discovery requests for these records pursuant to the civil rules either before or after she initially requested them in writing on July 18, 2006 (although DSHS claims that her attorney had knowledge of the pending petition as early as June 2006). She then waited until March 2007 to file a motion requesting access, as well as sanctions, several months after the trial court set the matter for trial. Because she failed to follow the civil discovery rules, Rioux is not entitled to sanctions.

## V. ATTORNEY FEES

¶19 In addition to attorney fees under the PRA, Rioux requests reasonable attorney fees incurred on appeal. Because we affirm the trial court's ruling denying Rioux's request for attorney fees and sanctions, we deny this request.

¶20 We reverse the trial court's ruling that RCW 13-.50.100(10) does not apply in a dependency guardianship proceeding, but we affirm its ruling denying Rioux's requests for attorney fees, costs, and daily fines.

HOUGHTON, J., concurs.

¶21 QUINN-BRINTNALL, J. (concurring in the result) — I concur with the result and the majority's holding that RCW 13.50.100 governs the release of confidential juvenile justice and care agency records by the Department of Social and Health Services (DSHS). *See Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 89-90, 93 P.3d 195 (2004). I write separately to explain what I see as the interplay of three release provisions in RCW 13.50.100 that apply to this case.

¶22 RCW 13.50.100(7), (8), and (10) are relevant here. If the statutory requirements are satisfied, subsection (7) allows access by "[a] juvenile, his or her parents, the juvenile's attorney and the juvenile's parent's attorney." RCW 13.50.100(7). Such access will be to "all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile," subject to several exceptions. RCW 13.50.100(7). Subsection (8) allows "[a] juvenile or his or her parent" who is denied access to records under subsection (7) to move a juvenile court for access to the records. RCW 13.50.100(8). Neither subsection (7) nor (8) allows the juvenile court to impose monetary penalties on DSHS for failure to provide timely access to the records described in subsection (7). *See* RCW 13.50.100(7)-(8).

¶23 Instead, subsection (10) sets forth the requirements for such penalties and the subject of who may access records under that section is more specific than the subject of who is eligible to receive records under subsection (7). Under subsection (10):

> Subject to the rules of discovery in civil cases, *any party* to a proceeding seeking a declaration of dependency or a termination of the parent-child relationship and any party's counsel and the guardian ad litem of any party, shall have access to the records of *any natural or adoptive child of the parent*, subject to the limitations in subsection (7) of this section. A party denied access to records may request judicial review of the denial. If the party prevails, he or she shall be awarded attorneys' fees, costs, and an amount not less than five dollars and not more than one hundred dollars for each day the records were wrongfully denied.

RCW 13.50.100(10) (emphasis added). In short, subsection (7) does not provide for penalties and it gives parents access to records and information pertaining to that child. Subsection (10) gives access to all parties, including parent-parties, and provides penalties for wrongful denial of this access. RCW 13.50.100.

¶24 Here, Joan Rioux sought records regarding herself and her dependent child, K.B. RCW 13.50.100(7) gave

Rioux, as K.B.'s parent, general access to DSHS records pertaining to her child unless their release would be likely to cause severe psychological or physical harm to K.B. or Rioux or would violate K.B.'s right to privacy in her medical treatment. The statute also allows DSHS to delete the identity of persons or organizations reporting alleged child abuse of K.B. Under RCW 13.50.100(7), with the stated exceptions, Rioux was entitled to exercise her parental rights and obligations to review K.B.'s file and any other records and information collected or retained by DSHS that pertained to K.B. If the agency determined that it would not provide Rioux access to K.B.'s records, Rioux had the right to petition the juvenile court for an order requiring that she be given this access, but nothing provided that DSHS could be sanctioned. RCW 13.50.100(8). Notably, RCW 13.50-.100(7) allowed juvenile and parental review of this information independent of any pending or prior departmental proceedings. A concerned noncustodial parent, for example, would have the right to periodically review his or her child's juvenile file.

¶25 In contrast, when a parent is also a party to a dependency or termination proceeding, or (as we today hold this is) a dependency guardianship proceeding, RCW 13-.50.100(10) alters the presumption in subsection (7) that a parent has the right to access her child's file. Subsection (10) is broader than subsection (7) in the sense that it allows access to records of any natural or adoptive child of the parent-party, including children who may have reached the age of majority or are not the subject of the dependency or termination action at issue. But subsection (10) retains the exclusions to access set forth in subsection (7). More important to this case, subsection (10) also subjects all requests to the rules of discovery. This provision is consistent with the general law governing public records disclosure: "Any materials that would not be discoverable in the context of a controversy under the civil rules of pretrial discovery are also exempt from public disclosure under RCW 42.56.290." *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007).

¶26 In my opinion, once Rioux became a party in an action affecting the duration or scope of her parental status as to any of her children, RCW 13.50.100(10) governed her access to K.B.'s records and required Rioux to comply with the civil discovery rules to access K.B.'s files. Accordingly, I concur.