FILED
COURT OF APPEALS
DIVISION II

2013 SEP 10 AM 8: 37

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMBER WRIGHT,<br><br>                    Respondent,<br><br>    v.<br><br>STATE OF WASHINGTON, DEPARTMENT<br>OF SOCIAL AND HEALTH SERVICES,<br><br>                    Appellants. | No. 42647-1-II<br><br><br><br>PUBLISHED OPINION |

HUNT, P.J. — The Department of Social and Health Services (DSHS) appeals the trial court's final order and finding that DSHS violated the Public Records Act (PRA)[1] [2] by failing to provide certain records in response to Amber Wright's PRA requests. DSHS also appeals the trial court's award of penalties, litigation costs, and attorney fees to Wright. DSHS argues that (1) of the four records that Wright alleges it failed to disclose, two of them are not governed by the PRA and the other two were time-barred; and (2) the trial court erred in awarding PRA damages, attorney fees, costs, and penalties to Wright for these perceived violations. We hold that the PRA does not apply to chapter 13.50 RCW juvenile records and that Wright never

---

[1] Chapter 42.56 RCW.

[2] While this case was pending, the legislature amended several pertinent statutes, which amendments do not affect our analysis. Thus, in this opinion, we cite the current statutes unless we indicate otherwise.

No. 42647-1-II

submitted a PRA request for the other records that she now claims DSHS impermissibly withheld. We reverse the trial court's final order finding that DSHS violated the PRA and the trial court's award of attorney fees, costs, and penalties to Wright.

FACTS

I. PUBLIC RECORDS REQUESTS

A. First Request, March 26, 2007

On March 26, 2007, Amber Wright wrote to the State of Washington Department of Social and Health Services (DSHS), requesting "a copy of her entire DSHS file." Clerk's Papers (CP) at 145. Within several days, DSHS replied, informing Wright that she would have to sign a release to obtain the records and that she would receive them under chapter 13.50 RCW.[3] Wright responded with a signed consent form; Diane Fuller, a supervisor at DSHS, then requested clarification:

> [I]f you are seeking all DSHS records I will need to forward your request to the other agencies . . . . My understanding is that you are only seeking Children's Administration records and [I] will begin processing your request. If I am in error and you wish these other agencies to [be] contacted please let me know.

CP at 154.

Approximately one month later, on June 1, DSHS provided Wright with her Children's Administration record, which consisted of five volumes; DSHS also provided page numbers and explanations for any redactions.

---

[3] Chapter 13.50 RCW governs the maintenance and release of dependency records by juvenile justice or care agencies. *In re Dependency of J.B.S.*, 122 Wn.2d 131, 134, 856 P.2d 694 (1993).

2

## B. Second Request, May 20, 2008

Over one year later, on May 20, 2008, Wright sent a second request to DSHS, stating, "Pursuant to [chapter] RCW 42.56 *et seq.* and [chapter] RCW 13.50 *et seq.*, please consider this an official request pursuant to the Washington State Public Disclosure Statutes for any and all documents relating to Amber Wright." CP at 11. More specifically the letter requested:

> [C]opies of any and all documents already produced to *any* person or agency regarding Amber Wright. . . . This includes, but is not limited to, the following documents:
> 1. Any and all documents produced to the Pacific County Prosecutor's Office;
> 2. Any and all documents produced to the Sumner Police Department and
> 3. Any and all documents produced as a result of any prior public disclosure and/or records request not listed above.

CP at 11.

Approximately one week later, DSHS notified Wright that (1) her Children's Administration records were confidential and exempt from public disclosure under chapter 42.56 RCW but her authorization permitted disclosure under chapter 13.50 RCW; and (2) she could expect to receive the other requested records within 120 business days.[4] From July through November 2008, DSHS provided Wright with copies of her requested records. On November 14, 2008, DSHS notified Wright that her records request was complete. Wright did not follow

---

[4] Wright responded that DSHS's timeframe was "unacceptable" and that if she did not receive the records within 40 days of her original request date, she would sue DSHS. CP at 30. DSHS informed Wright that it would process her request as quickly as possible, emphasizing, however, that it (1) did not have the "staff or the resources available to process all pending requests at the same time," (2) was "not permitted by law to distinguish between requesters," and (3) "[could not] give [Wright's] request priority over other pending requests." CP at 32. DSHS further noted that Wright's request was considered a "large volume request," comprising seven volumes. CP at 33. Wright did not file a PRA action against DSHS at that time.

up with any additional requests or questions after receiving this last disclosure. Nor did she file a PRA lawsuit.

In December 2009, under RCW 13.50.100, DSHS provided a transcribed copy of a 2005 CD-recorded interview with Wright. DSHS informed Wright that the recording had not been included in its response to Wright's May 20, 2008 request because the interview had "only recently been located," and DSHS was trying to determine how this recording had been missed in its original search. CP at 221.

## II. PROCEDURE

On April 6, 2010, Wright sued DSHS for alleged violations of the PRA. She asserted that DSHS had failed to produce certain required documents in response to her PRA requests, such as the 2005 interview and "other critical evidence, including investigative protocols and policies, requested by [Wright]." CP at 4. At trial, Wright claimed that DSHS should have provided its Child Sexual and Physical Abuse Investigation Protocols (investigation protocols) and its Preservice Training for Prospective Foster Parents and Adoptive Parents PRIDE manual (PRIDE manual) in response to her PRA requests, and that its failure to do so entitled Wright to PRA penalties.

In January 2011, DSHS moved for partial summary judgment, arguing that (1) all of the records DSHS provided in response to Wright's March 26, 2007 request were child welfare records, governed by RCW 13.50.100 and, thus, not subject to her PRA action; and (2) all of the records that DSHS had provided in response to her May 20, 2008 request, except for 69 pages,[5]

---

[5] These 69 pages are not at issue in this appeal.

were child welfare records, similarly governed by RCW 13.50.100. Shortly thereafter, the State brought a second motion for summary judgment, arguing that Wright's lawsuit seeking damages for DSHS's failure to provide the 69 pages not governed by RCW 13.50.100 was time barred or, alternatively, that DSHS did not wrongfully withhold the records in violation of the PRA. The trial court denied both of DSHS's summary judgment motions.

The case proceeded to a bench trial. The trial court ruled that DSHS violated the PRA by failing to provide the recorded interview and transcription, the PRIDE manual, and the investigation protocols in response to Wright's PRA requests. The trial court also concluded that DSHS had violated the PRA by failing to provide a privilege log identifying each record that it had withheld from Wright. The trial court awarded Wright penalties of $100.00 a day, totaling $287,800.00; $16,096.87 in litigation costs; and attorney fees, with a lodestar[6] multiplier of 2, totaling $346,000.00. DSHS appeals each of these rulings.

## ANALYSIS

### I. No PRA Request for DSHS PRIDE Manual and Investigation Protocols

DSHS first argues that, because Wright never asked DSHS to produce its PRIDE manual and investigation protocols documents, the trial court erred in concluding that (1) Wright's PRA action was timely filed, and (2) DSHS violated the PRA by failing to provide Wright with those documents. We agree with the State: The record shows Wright's PRA request did not include

---

[6] Under the lodestar methodology, a trial court must determine the reasonable number of hours counsel expended and the reasonableness of counsel's hourly rate. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). In rare instances, as here, a court may adjust the lodestar fee upward or downward. *Mahler*, 135 Wn.2d at 433-34.

the PRIDE manual or investigation protocols. We hold, therefore, that the trial court erred in concluding that DSHS had violated the PRA by failing to provide these unrequested documents.

## A. Standard of Review

We review de novo challenged agency responses to PRA requests. RCW 42.56.550(3). Thus, we stand in the same position as the trial court. *O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 904, 25 P.3d 426 (2001). The PRA requires agencies to respond to requests for only "identifiable public records." RCW 42.56.080; *see also Hangartner v. City of Seattle*, 151 Wn.2d 439, 447-48, 90 P.3d 26 (2004). A party seeking public records under the PRA must, "at a minimum, provide notice that the request is made pursuant to the [PRA] and identify the documents with reasonable clarity to allow the agency to locate them." *Hangartner*, 151 Wn.2d at 447.

## B. Wright's PRA Request

On March 26, 2007, Wright submitted her first request to DSHS, seeking "her entire DSHS file." CP at 145. On June 1, DSHS sent her a five-volume file that contained her children's juvenile administrative records, which DSHS explained it was providing under the juvenile records act, chapter 13.50 RCW, rather than under the PRA, chapter 42.56 RCW. More than one year later, on May 20, 2008, Wright submitted a second request to DSHS, seeking "any and all documents relating to Amber Wright." CP at 11. DSHS responded to Wright's second request by again providing under chapter 13.50 RCW a series of disclosures related to her children's juvenile administrative records.

As our Supreme Court has explained,

The [PRA] was enacted to allow the public access to government documents once agencies are allowed the opportunity to determine if the requested documents are exempt from disclosure; it was not enacted to facilitate [the] unbridled searches of an agency's property. [*A*] *proper request under the [PRA] must identify with reasonable clarity those documents that are desired.*

*Hangartner*, 151 Wn.2d at 448 (emphasis added). The PRIDE manual and investigation protocols provide general DSHS guidance and procedures for numerous DSHS clients and other members of the public; they are not specific to Wright's individual Child Protective Services (CPS) referral history and records.

Wright's request for document production neither expressly mentioned nor identified with "reasonable clarity" the manual or the protocols; on the contrary, its language limited her request to a broad range of materials specifically related to the 2005 investigation of a CPS referral when she was a child.[7] We hold, therefore, that because Wright's request for "any and all documents relating to Amber Wright"[8] did not include the DSHS protocols and manual with

---

[7] Wright's May 20, 2008 PRA request to DSHS expressly sought:
> [A]ny and all documents relating to Amber Wright and/or David Wright.
> [. . .]
> This includes, but is not limited to any and all intake documents, any and all notes, e-mails, letters, faxes, photographs and/or other documentation generated or received by Department personnel during investigation of this complaint. **This request also includes, but is not limited to, any documents relating to the resolution of this complaint** including reports, compliance agreements, revocation letters, etc.

CP at 11-12 (emphasis added). Wright argues that the above bolded language required DSHS to disclose the investigative protocols and PRIDE manual. But the second half of this sentence clarifies that Wright was seeking *case-specific* documents and not general internal guidance manuals and protocols.

[8] CP at 11.

No. 42647-1-II

"reasonable clarity,"[9] DSHS's "failure" to disclose these documents was not a PRA violation and cannot support the trial court's PRA award to Wright for attorney fees, costs, and penalties.

## II. JUVENILE RECORDS COVERED EXCLUSIVELY BY CHAPTER 13.50 RCW

DSHS next argues that of the four records in dispute, production of two of them—her recorded interview and its transcription—are governed exclusively by chapter 13.50 RCW; and, therefore, the trial court erred in ruling that DSHS should have provided them to Wright in response to her PRA request. Again, we agree.

### A. Standard of Review; PRA Disclosure Policies

We review de novo questions of law, including statutory construction. *Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). We look to a statute's plain language to give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). When faced with two controlling statutes, the more specific one controls. *Waste Mgmt.*, 123 Wn.2d at 630.

Generally, the PRA favors broad disclosure of public records and requires state agencies to disclose and to produce public records on request unless an exception applies. *West v. Wash. State Dep't of Natural Res.*, 163 Wn. App. 235, 242, 258 P.3d 78 (2011), *review denied*, 173 Wn.2d 1020 (2012); *see* RCW 42.56.070(1). But because the PRA applies only to public

---

[9] *Hangartner*, 151 Wn.2d at 448.

8

records, we first must determine whether two juvenile records[10] contained in Wright's social file—the recorded interview and its transcription—are "public records" within the meaning of the PRA, chapter 42.56 RCW.[11]

### B. "Public Records," RCW 42.56.010(3)

The PRA broadly defines the term "public record" to include

> any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

RCW 42.56.010(3). Because DSHS prepared, used, or retained the juvenile records[12] contained in Wright's social file for purposes of performing its statutory mission to protect children, the requested records fit this statutory definition of "public records." *See Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 90, 93 P.3d 195 (2004). Meeting this definition of "public

---

[10] RCW 13.50.010(1)(c) defines juvenile "records" as "the official juvenile court file, the social file, and records of any other juvenile justice or care agency in the case." *See also State v. Sanchez*, No. 87740-8, 2013 WL 3761532, at *5 (Wash. July 18, 2013) (A juvenile's "court file," which may include court filings, findings, order, and other documents filed with the superior court, is open to the public unless sealed; but the "social file" is generally confidential).

[11] In analyzing this question, we interpret the disclosure provisions of the PRA liberally and exemptions narrowly. *Koenig v. Thurston County*, 175 Wn.2d 837, 842, 287 P.3d 523 (2012). The PRA directs, "Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3). The agency claiming the exemption, here, DSHS, bears the burden of proving that the requested documents fall within the scope of the exemption. *Koenig*, 175 Wn.2d at 842.

[12] This interview transcription was not part of Wright's juvenile file; and it was not in existence at the time of Wright's PRA requests. Thus, this transcription was not a "public record" for PRA purposes. RCW 42.56.010(3). DSHS later transcribed Wright's interview as a courtesy, *after* she submitted her records request.

records," however, does not automatically mean that the records at issue here were subject to disclosure under the PRA or penalties for failure to make such disclosure.

### C. Independent Chapter 13.50 RCW Exemption from PRA

DSHS contends that the PRA does not apply to and, therefore, did not require production of Wright's recorded interview and transcription because chapter 13.50 RCW prescribes the exclusive method for procuring juvenile records and, thus, separately exempts these juvenile records from the PRA's disclosure requirements and penalties. We agree.

The PRA provides that a requested record may be exempt from disclosure if the record is controlled by any "*other statute which exempts or prohibits disclosure* of specific information or records." RCW 42.56.070(1) (emphasis added). RCW 13.50.100(2) expressly provides: "Records covered by this section shall be confidential and *shall be released only pursuant to this section and RCW 13.50.010.*"[13] (Emphasis added) (second emphasis added). Relying on this provision, we have previously held that chapter 13.50 RCW provides the exclusive means of obtaining juvenile justice and care records. *Deer*, 122 Wn. App. at 92.[14] In *Deer*, the "sole question" was "whether a person denied access to DSHS records in which they or their children are named can use the processes and obtain the relief set forth in the [Public Disclosure Act] PDA." *Deer*, 122 Wn. App. at 88. We concluded that the child dependency records Deer sought

---

[13] RCW 13.50.010.

[14] The trial court denied Deer's show cause action alleging that DSHS had violated the PRA's predecessor, the Public Disclosure Act, for failure to produce DSHS juvenile records. *Deer*, 122 Wn. App. at 87-88. The legislature's 2005 recodification of the Public Disclosure Act, chapter 42.17 RCW, as the Public Records Act, chapter 42.56 RCW, did not alter the pertinent language on which we relied in *Deer*. *See* former chapter 42.17 RCW; *recodified as* chapter 42.56 RCW (LAWS OF 2005, ch. 274, *effective* July 1, 2006).

were public records within the meaning of the PDA, but that chapter 13.50 RCW is an "'other statute'" that "'exempts or prohibits'" disclosure "of particular documents to particular people under [the PDA]." *Deer*, 122 Wn. App. at 89-90, 92 (quoting RCW 42.17.260). Consequently, Deer could not use the PDA's public record request procedures or seek remedies for DSHS's alleged PDA noncompliance because chapter 13.50 RCW is the exclusive means of obtaining the juvenile records at issue. *Deer*, 122 Wn. App. at 92-93. As in *Deer*, here, too, the PRA did not apply to Wright's request for the recorded interview and transcription and did not require DSHS to produce those records.

Similarly, in *In re Dependency of K.B.*, the petitioner "agree[d] that chapter 13.50 RCW controls the *process* but argue[d] that it does not control the *sanctions* that may be imposed for [DSHS's] improper failure to disclose" requested juvenile records. 150 Wn. App. 912, 920, 210 P.3d 330 (2009). Disagreeing, we held,

> If the legislature had intended to provide PRA sanctions in cases in which DSHS wrongfully denies access to chapter 13.50 RCW records, then it would have specified this in RCW 13.50.100(1).

*K.B.*, 150 Wn. App. at 923. We further noted that the legislature passed chapter 13.50 RCW to specify the exclusive "process, including sanctions, for obtaining juvenile justice and care agency records, after the PRA." *K.B.*, 150 Wn. App. at 923. Here, we similarly hold that the PRA does not provide Wright with an applicable remedy for her unsupported claim that DSHS violated the PRA, based on its alleged "late" disclosure of the audio recorded interview and its transcription, available only under chapter 13.50 RCW.

Because the legislature has prescribed chapter 13.50 RCW as the sole method for obtaining juvenile records maintained under that chapter, we hold that (1) the PRA did not apply

to DSHS's production of her interview recording and transcription; (2) DSHS did not violate the PRA in failing to disclose these requested items until it later found them; and (3) Wright was not entitled to any PRA awards for DSHS's nonexistent noncompliance.

### D. Juvenile "Records" under Chapter 13.50 RCW

Nevertheless, Wright argues that (1) "[a]t trial, DSHS offered *no* evidence that the audio recording was a 'record' as defined in RCW 13.50.010"[15] or that the recording was kept in the official juvenile court file or social file, and thereby failed to meet its burden of proof at trial;[16] (2) treating DSHS as a juvenile justice or care agency would exempt "*all* of [its] records";[17] and (3) chapter 13.50 RCW applies only to dependency records. Br. of Resp't at 26 (citing *Deer*, 122 Wn. App. at 90). We disagree.

Contrary to Wright's first argument, a DSHS representative testified at trial that the CD containing the recorded interview had been found in Wright's Children's Administration file,[18] maintained by the Children's Administration division of DSHS. The interview transcription was admitted into evidence as an accurate copy of the audio recording; the attached cover letter stated that DSHS was providing this transcript "pursuant to RCW 13.50.100," with no mention of the

---

[15] RCW 13.50.100(10) provides:
> Subject to the rules of discovery in civil cases, any party to a proceeding seeking a declaration of dependency or a termination of the parent-child relationship and any party's counsel and the guardian ad litem of any party, shall have access to the records of any natural or adoptive child of the parent.

[16] Br. of Resp't at 22.

[17] Br. of Resp't at 23.

[18] Children's Administration records form a subpart of a child's juvenile file.

PRA. Ex. 4 at 1. Moreover, the records Wright sought were not part of any official court file at the time she made her PRA request; therefore, they were confidential and part of her juvenile social file, subject only to the exceptions listed in RCW 13.50.050(3). *See State v. Sanchez*, No. 87740-8, 2013 WL 3761532, at *5 (Wash. July 18, 2013).

Contrary to Wright's second argument, DSHS does not claim that all of its records are exempt from disclosure under the PRA; instead, it argues that, of the records in dispute here, *only Wright's juvenile dependency recorded interview and transcription are exempt* from the PRA, by virtue of chapter 13.50 RCW. DSHS is correct: Under the legislature's express language, chapter 13.50 RCW controls "access to all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile." RCW 13.50.100(7).

We do not address Wright's third argument, including her narrow reading of our decision in *Deer*. *Deer* involved dependency records under chapter 13.50 RCW. *Deer*, 122 Wn. App. at 86. The CD and interview transcription here are also dependency records under chapter 13.50 RCW.[19] Thus, *Deer* controls this issue without expanding its scope.

Because Wright's recorded interview was available to her only under chapter 13.50 RCW, DSHS's failure to produce it in response to her PRA request cannot serve as the basis for a PRA violation. On the contrary, if Wright believed that DSHS had improperly denied her access to her recorded interview, she had to comply with the process set forth in RCW 13.50.100(8), which requires filing a motion in juvenile court requesting access to these records. *Deer*, 122 Wn. App. at 94 ("A party denied access to juvenile records must follow the

---

[19] Again, we use the term "records" lightly with respect to Wright's interview transcription, which was not yet in existence at the time of Wright's request. *See* footnote 12.

procedures set forth in chapter 13.50 RCW."). This she failed to do; instead, she pursued her interview recording and transcription only under the PRA, which did not apply. Accordingly, we hold that the trial court erred in ruling that the PRA required DSHS to provide Wright's recorded interview and transcription in response to her PRA request, that DSHS thereby violated the PRA, and that PRA penalties were warranted.

We reverse the trial court's final order finding that DSHS violated the PRA, and we reverse the trial court's PRA award of attorney fees, costs, and penalties to Wright.[20]

_____
Hunt, P.J.

We concur:

_____
Penoyar, J.

_____
Bjorgen, J.

---

[20] Consistently, in *Deer*, we concluded that, because "the PDA [did] not provide an applicable remedy" for non disclosure of juvenile records, Deer was not entitled to PDA sanctions and attorney fees for DSHS's alleged noncompliance with the PDA. *Deer*, 122 Wn. App. at 88, 94-95.