# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOHN DOE P; JOHN DOE Q; JOHN DOE R; and JOHN DOE S, as individuals and on behalf of others similarly situated, | No.  48000-0-II |
| Respondents, | |
| v. | |
| THURSTON COUNTY, a municipal organization, and its departments the THURSTON COUNTY PROSECUTING ATTORNEY, and THURSTON COUNTY SHERIFF, | PUBLISHED OPINION |
| Respondents, | |
| DONNA ZINK, a married woman, | |
| Appellant. | |

JOHANSON, J.  —  In response to Donna Zink's Public Records Act[1] (PRA) request, the John Does, four level I sex offenders, filed a class action lawsuit against Thurston County (the County).  The John Does successfully enjoined the disclosure of unredacted level I sex offender records, including, as relevant to this appeal, special sex offender sentencing alternative (SSOSA)

---

[1] Ch. 42.56 RCW.

and special sex offender disposition alternative[2] (SSODA) evaluations. Zink appeals the trial court's orders granting permission to proceed under pseudonym, certifying the class, and granting summary judgment in the John Does' favor. We hold that the trial court properly granted the John Does' summary judgment motion and enjoined the release of the unredacted evaluations. We further hold that Zink waived her arguments regarding the trial court's orders allowing the plaintiffs to proceed under pseudonyms and class certification when Zink failed to appear and object.

Zink also sought the release of sex offender registration records. We agree with the parties that the trial court erred when it enjoined the registration records' release under former RCW 4.24.550 (2011) in light of *John Doe A. v. Wash. State Patrol* (*WSP*), 185 Wn.2d 363, 385, 374 P.3d 63 (2016). Thus, we hold that the registration records must be released. Accordingly, we affirm the trial court's orders granting summary judgment and enjoining the unredacted evaluations' release, certifying the class action, and allowing the plaintiffs to proceed as John Does.

FACTS

I. PUBLIC RECORDS REQUEST

In October 2014, under the PRA, Zink requested the following records from the County: all SSOSA and SSODA evaluations and victim impact statements for sex offenders prosecuted in Thurston County, registration forms of sex offenders registered in Thurston County, and a list or

---

[2] RCW 9.94A.670 and RCW 13.40.162, respectively.

database of all sex offenders registered in Thurston County.[3]  The County responded that it was required to "provide third party notification to all of the registered sex offenders in our county" and that the first installment of records would be ready in March 2015.  Clerk's Papers (CP) at 159.  In December 2014, the County notified 723 sex offenders of Zink's request for SSOSA and SSODA evaluations and other information.

## II.  John Does' Lawsuit

### A.  Class Action Complaint

In January 2015, the John Does filed a class action complaint, which listed Zink as a party. They sought a permanent injunction to enjoin the County from disclosing all level I sex offender registration records[4] and all SSOSA and SSODA evaluations.  The John Does did not object to the victim impact statements' disclosure.  The John Does identified themselves as Thurston County residents who had each been convicted of a sex offense, completed treatment, and had either registered as a sex offender or been excused from registration.

### B.  Class Certification, Pseudonym, and Preliminary Injunction Hearing

In January, the John Does moved for class certification, permission to proceed under pseudonyms, and a preliminary injunction preventing the release of the evaluations and registration

---

[3] Zink made a second request for all sex offender "[s]entencing and [j]udgment documents" held in Thurston County and for all level I noncompliant or transient sex offenders' registration forms in December.  Clerk's Papers (CP) at 185.  The County provided Zink with installments of these records between January and May 2015.

[4] Although the State disclosed level II and III sex offenders' names, the State generally did not disclose level I sex offenders' names unless a sex offender had not complied with registration requirements.  Former RCW 4.24.550(5)(a).

records. The County did not challenge class certification or the use of pseudonyms, although the County opposed the preliminary injunction. Zink did not respond to the motions.[5]

Within a month, the trial court heard argument from the John Does and the County regarding the three motions. The trial court noted that Zink had been "properly notified . . . of this hearing" yet failed to respond or appear at the hearing. Report of Proceedings (RP) (Jan. 23, 2015) at 7. The trial court stated that it "appear[ed] that the [John Does and the County] ha[d] come to an agreement" to allow class certification and the use of pseudonyms. RP (Jan. 23, 2015) at 15. Regarding the motion to proceed under pseudonyms, the trial court found that "[t]here is no dispute that the plaintiffs exist and have an interest in this litigation."[6] CP at 92. The trial court granted the request to proceed under pseudonyms and concluded,

> [The John Does] seek to exercise their right . . . to enjoin release of personally identifying information which they contend is exempt from the PRA. Forcing [the John Does] to disclose their identities to bring this action would eviscerate their ability to seek relief. . . .
>     . . . .
>     [The John Does'] interest in proceeding anonymously outweighs the public interest in knowing their names.

---

[5] Zink had apparently e-mailed an answer and notice of appearance to the other parties but neither filed these documents with the trial court before the hearing nor appeared at the hearing. Zink filed her answer and notice of appearance in February.

[6] At the hearing, the trial court acknowledged a concern in other cases regarding "speculation as to impact or whether there is an actual controversy because the plaintiffs are not identified anywhere in the record." RP (Jan. 23, 2015) at 15. But these concerns were not present with the John Does because it was "clear that there are individuals in each of the groups represented by the [John Does], that it's not speculative and that it would not be required to name [the John Does] and then seal their names somewhere." RP (Jan. 23, 2015) at 16.

CP at 92. The trial court explained that because there was no reason to place the John Does' names on the record, no portion of the record was sealed, and it was unnecessary to analyze the *Ishikawa*[7] factors.

The trial court also granted the John Does' preliminary injunction motion and the unopposed class certification motion. The trial court authorized the John Does to represent a class defined as

> "[a]ll individuals named in registration forms, a registration database, SSOSA evaluations, or SSODA evaluations in the possession of Thurston County, and classified as sex offenders at risk level I who are compliant with the conditions of registration or have been relieved of the duty to register."

CP at 87.

### C. SUMMARY JUDGMENT

In June, the John Does moved for summary judgment on their request for a permanent injunction.[8] The John Does first contended that the registration information was exempt from disclosure under public notification provisions of the "Community Protection Act" (CPA), former RCW 4.24.550, incorporated into the PRA as an "other statute."[9] Second, the SSOSA and SSODA evaluations were exempt under the PRA's Uniform Health Care Information Act (UHCIA), ch. 70.02 RCW, exemption. And third, the SSODA evaluations were exempt under the juvenile records statute, ch. 13.50 RCW, another "other statute" incorporated by the PRA. The John Does

---

[7] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

[8] In a cross motion for summary judgment, Zink sought to have the action dismissed.

[9] The PRA's "other statute" exemption exempts from production records that fall within "the specific exemptions of [an] other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1); *WSP*, 185 Wn.2d at 372.

argued that they met the PRA's requirements for a permanent injunction because the records pertained to them and to the class and were exempt from production and because disclosure would not be in the public interest and would substantially and irreparably harm the class.

In support of their argument that disclosure would irreparably harm the class and would not be in the public's interest, the John Does submitted their own declarations and those of attorneys and sex offender treatment and prevention organizations. These declarations explained the intimate details contained in the evaluations, including broad descriptions of an offender's sexual partners, activities, and preferences; the offender's mental health, personal life, and background; and any uncharged offenses. Multiple declarations explained that the disclosure of the evaluations would hamper treatment and harm public safety because offenders would refuse to participate or fully respond to questions.

The County opposed the John Does' summary judgment motion and argued that the CPA, former RCW 4.24.550, was not an "other statute" under the PRA and did not exempt the disclosure of level I sex offender registration information. Further, the County contended that the SSOSA and SSODA evaluations did not fit within the PRA's UHCIA exemption and that the SSODA evaluations could be redacted and released under the juvenile records statute, ch. 13.50 RCW.

Zink opposed the John Does' summary judgment motion. In particular, Zink claimed that the CPA, former RCW 4.24.550, was not an "other statute" exemption, that the records were conviction records subject to dissemination under the Washington State Criminal Records Privacy Act (CRPA), ch. 10.97 RCW, that the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, RCW 9.94A.475, required the evaluations' release, and that the SSODA evaluations were juvenile records open to public inspection under ch. 13.50 RCW. Additionally, Zink contended that the

6

John Does had not shown that they would suffer actual and substantial harm from disclosure or that the public had no interest in the requested records. In support of her summary judgment opposition, Zink submitted a variety of documents related to sex offenders,[10] including several news articles about sex offenders, some of whom had received SSOSAs and one of whom had violated his SSOSA by failing to report.

Noting that the material facts were undisputed and that the questions to be resolved were solely questions of law, the trial court granted the John Does' summary judgment motion and request for a permanent injunction that enjoined the County from releasing unredacted records. The trial court found that the Does' "uncontested" declarations attested to substantial and irreparable harm that would result from unredacted disclosure and that "the record establishe[d] that unredacted disclosure would not be in the public interest." CP at 670. And the trial court determined that the records at issue fell within the PRA's UHCIA exemption and "other statute" exemption, incorporating the CPA, former RCW 4.24.550, and the juvenile records statute, ch. 13.50 RCW. Thus, the trial court concluded that the John Does were entitled to permanent injunctive relief because the records at issue pertained to the class and were exempt from disclosure and because unredacted disclosure would not be in the public interest and would substantially and irreparably harm the class members. The trial court expressly declined to determine whether

---

[10] These included the State's sex offender risk level classification evaluation, news articles about sex offenders' offenses, a sex offender registration record obtained from another record request, threatening e-mails sent to Zink in response to her records requests, the State attorney general's opinion letter that former RCW 4.24.550 was not an "other statute" PRA exemption, and correspondence with another county revealing that the county had released SSOSA evaluations to Zink.

redacted records could be disclosed and ruled that it did not authorize in camera review "at this time." CP at 671.

Zink appeals the summary judgment, pseudonym, and class certification orders.[11]

ANALYSIS

I. SUMMARY JUDGMENT

A. OVERVIEW OF THE PRA

We review summary judgment decisions and actions under the PRA's injunction statute, RCW 42.56.540, de novo. *Planned Parenthood of the Great Nw. v. Bloedow*, 187 Wn. App. 606, 618, 350 P.3d 660 (2015). The PRA is a "'strongly worded mandate for broad disclosure of public records.'" *WSP*, 185 Wn.2d at 371 (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). In enacting the PRA, the legislature made certain records exempt from production through specific exemptions listed in the PRA itself. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 432, 327 P.3d 600 (2013). Among these exemptions is an exemption for health care information under the UHCIA. Former RCW 42.56.360(2); *Prison Legal News, Inc. v. Dep't of Corrections*, 154 Wn.2d 628, 644, 115 P.3d 316 (2005). Disclosure provisions in the PRA are to be interpreted liberally and exemptions narrowly. *WSP*, 185 Wn.2d at 371 (quoting RCW 42.56.030).

The injunction statute provides for court protection of public records that fall within the PRA's exemptions:

---

[11] Zink provides 42 assignments of error in her appellant's brief, a number of which are unsupported by argument or citation to legal authority; we do not address these unsupported assignments of error. RAP 10.3.

> The examination of any specific public record may be enjoined if, upon motion and affidavit by . . . a person who is named in the record or to whom the record specifically pertains, the superior court . . . finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

RCW 42.56.540. To enjoin disclosure under the injunction statute, a trial court must find "that a specific exemption applies and that disclosure would not be in the public interest and would substantially and irreparably damage a person." *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 808, 246 P.3d 768 (2011).

## B. SSOSA AND SSODA EVALUATIONS

"[T]he legislature developed [SSOSA] for first time offenders to prevent future crimes and [to] protect society." *Koenig v. Thurston County*, 175 Wn.2d 837, 847, 287 P.3d 523 (2012). A SSOSA is a special procedure that allows a sentencing court to suspend a sex offender's felony sentence if the offender meets certain statutory criteria. *State v. Sims*, 171 Wn.2d 436, 439 n.1, 256 P.3d 285 (2011).

Under the SSOSA statute, the trial court may order an eligible offender to complete an examination "to determine whether the offender is amenable to treatment." RCW 9.94A.670(3). The examination report must include the offender's version and the official version of the facts, the offender's offense history and social and employment situation, "(i) [a]n assessment of problems in addition to alleged deviant behaviors," "(v) [o]ther evaluation measures used," and the sources of the examiner's information. RCW 9.94A.670(3)(a). The examiner also must report regarding "the offender's amenability to treatment and relative risk to the community." RCW 9.94A.670(3)(b).

9

Further, the examiner must provide a proposed treatment plan that includes the frequency, type, and length of therapy, "(ii) . . . issues to be addressed in the treatment and . . . planned treatment modalities," "(iii) [m]onitoring plans," and recommended prohibitions and conditions. RCW 9.94A.670(3)(b). The prohibitions and conditions must include, "to the extent known, an identification of specific activities . . . that are precursors to the offender's offense cycle, . . . such as viewing or listening to pornography or use of alcohol or controlled substances." RCW 9.94A.670(3)(b)(v).

After receiving the evaluation, the trial court must consider a number of circumstances, including whether the offender is amenable to treatment, to determine whether the offender should receive a SSOSA. RCW 9.94A.670(4). The trial court must impose conditions, including "(c) [t]reatment" and "(d) [s]pecific prohibitions and affirmative conditions relating to the known precursor activities or behaviors identified in the proposed treatment plan." RCW 9.94A.670(5). The sex offender treatment provider cannot be the same person who performed the evaluation to determine if the offender was amenable to treatment, unless authorized by the trial court. RCW 9.94A.670(13).

Similar to SSOSA, SSODA provides an "alternative to traditional sentencing" for juveniles facing a first-time adjudication for certain sex offenses. *State v. Sanchez*, 177 Wn.2d 835, 840, 306 P.3d 935 (2013). Like the SSOSA statute, the SSODA statute allows a trial court to order an evaluation to determine the offender's "amenability to treatment," and the evaluation must include the same information as a SSOSA evaluation, including a proposed treatment plan. RCW 13.40.162(2)(a)-(b). The trial court must then consider whether a SSODA will benefit the offender and the community to determine whether a SSODA is appropriate. RCW 13.40.162(3).

10

Both SSOSA and SSODA examinations are conducted by sex offender treatment providers under ch. 18.155 RCW. RCW 9.94A.670(13); RCW 13.40.162(7)(c). WAC regulations promulgated under ch. 18.155 RCW require that evaluations contain, among other things, the evaluator's conclusions about the appropriateness of community treatment and "diagnostic impressions." WAC 246-930-320(2)(f)(i), (ii).

## C. PERMANENT INJUNCTION

Zink and the County contend that the trial court improperly granted summary judgment of the John Does' permanent injunction request and enjoined the release of unredacted SSOSA and SSODA evaluations. We disagree.

### 1. PRA's UHCIA EXEMPTION

Zink and the County claim that the trial court erred as a matter of law when it determined that the SSODA and SSOSA evaluations were exempt under the PRA's UHCIA exemption, former RCW 42.56.360(2).[12] We disagree and affirm the trial court's ruling that under the PRA's UHCIA exemption, the unredacted evaluations were not subject to disclosure.

#### a. OVERVIEW

The PRA's UHCIA exemption states that "[c]hapter 70.02 RCW [the UHCIA] applies to public inspection and copying of health care information of patients." Former RCW 42.56.360(2). In enacting the UHCIA, which addresses access to and disclosure of health care information, the legislature found that "health care information 'is personal and sensitive information that if

---

[12] Zink also argues that the SSOSA evaluations were subject to disclosure under the juvenile records statute, ch. 13.50 RCW, as an "other statute." We hold that the SSODA and SSOSA evaluations are exempt under the PRA's UHCIA exemption, and thus we do not reach the issue of whether the SSODA evaluations are exempt under ch. 13.50 RCW.

11

improperly used or released may do significant harm to a patient's interests in privacy, health care, or other interests'" and "[i]t is the public policy of this state that a patient's interest in the proper use and disclosure of the patient's health care information survives *even when the information is held by persons other than health care providers*." RCW 70.02.005(4) (emphasis added); *Bloedow*, 187 Wn. App. at 611 (quoting RCW 70.02.005(1)).

The UHCIA generally provides that,

> [e]xcept as authorized elsewhere in [the UHCIA], a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization.

RCW 70.02.020(1). "'Health care information'" is "any information . . . that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care." RCW 70.02.010(16).

In *John Doe G v. Dep't of Corrections*, Division One of this court held that the PRA's UHCIA exemption prevented unredacted SSOSA evaluations' disclosure because the evaluations contained confidential health care information. 197 Wn. App. 609, 613-14, 391 P.3d 496 (2017), *review granted in part*, 2017 WL 2351142.

b.      "PATIENT"

Zink argues that the PRA's UHCIA exemption does not apply because a sex offender is not the "'patient'" of an examiner. Br. of Appellant at 36. We disagree.

Under the UHCIA, a patient is one who "receives or has received health care" (RCW 70.02.010(32)), which is "any care, service, or procedure provided by a health care provider: (a) [t]o diagnose, treat, or maintain a patient's physical or mental condition." RCW 70.02.010(14).

The SSOSA statute generally provides that a sex offender treatment provider may not be the same person that conducted the examination.[13] RCW 9.94A.670(13).

Both SSOSA and SSODA statutes provide for an eligible person to be assessed to determine amenability to treatment and that the assessment set forth a proposed treatment plan. RCW 9.94A.670(3); RCW 13.40.162(2)(a)-(b). The evaluations must include, among other items, information about the offender's social and employment situation and "[a]n assessment of problems in addition to alleged deviant behaviors." RCW 9.94A.670(3)(a)(iii); RCW 13.40.162(2). Further, evaluations must include the examiner's conclusions about the appropriateness of community treatment, "diagnostic impressions," and "specific assessment of relative risk factors." WAC 246-930-320(2)(f)(i)-(iii). Evaluations must also address "[m]ental health functioning including coping abilities, adaptation style, intellectual functioning and personality attributes." WAC 246-930-320(2)(e)(ix).

To diagnose is to "identify (as a disease or condition) by symptoms or distinguishing characteristics" or "to determine the causes of or the nature of by diagnosis." WEBSTER'S THIRD NEW INT'L DICTIONARY 622 (2002). The SSODA and SSOSA statutes and relevant WAC regulations require that examiners diagnose offenders' mental conditions because they require identification and assessment of problems and deviant behaviors as well as the examiner's "diagnostic impressions." *See* RCW 9.94A.670(3)(a); RCW 13.40.162(2); WAC 246-930-320(2)(f)(i)-(iii); *John Doe G*, 197 Wn. App. at 622-23. Thus, offenders who participate in SSOSA or SSODA evaluations receive "health care" because they receive diagnosis of a mental condition,

---

[13] SSODA does not contain a similar provision.

and the offenders are accordingly "patients" within the meaning of the UHCIA. RCW 70.02.010(14)(a), (32); *accord John Doe G*, 197 Wn. App. at 620, 623.

Zink argues that an offender is not the evaluator's "patient" because the evaluator is not the same person as the ultimate treatment provider. *See* RCW 9.94A.670(13). But this argument fails because, as discussed, a SSOSA evaluator provides *diagnosis* within the UHCIA's meaning, even if the evaluator is not the only one who ultimately provides *treatment. See* RCW 70.02.010(14)(a). Thus, we reject Zink's argument and hold that offenders receiving SSOSA or SSODA evaluations are "patients" within the UHCIA's meaning.

c.      "HEALTH CARE INFORMATION"

The County contends that evaluations relate to sentencing, not to the provision of health care, so that the evaluations do not contain "health care information." Br. of Resp't County at 4. This argument fails.

"'Health care information'" is "any information . . . that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care." RCW 70.02.010(16). Nothing in the UHCIA supports the County's narrow interpretation of "health care information" to mean "'for the sole purpose of'" offenders' health care. *John Doe G*, 197 Wn. App. at 621. Rather, as our Supreme Court has stated, a "SSOSA evaluation serves many important functions." *Koenig*, 175 Wn.2d at 847. Thus, we reject the County's interpretation and hold that the evaluations are "health care information" under the UHCIA.

d.      "HEALTH CARE PROVIDER"

The County argues that the County, not the examiner, would disclose the information and that the County is not a health care provider, even if the examiner is. Thurston County relies on

RCW 70.02.020, a UHCIA provision that governs "[d]isclosure by [a] health care provider" and bars a health care provider's (or a provider's agent's, employee's, or assistant's) disclosure of health care information with a patient's authorization. We disagree.

The purpose of the PRA's exemptions is "solely to protect relevant privacy rights or vital governmental interests" that may outweigh the PRA's broad policy in favor of disclosure of public records. *Resident Action Council*, 177 Wn.2d at 432. The PRA's exemptions are concerned with the category of privacy right or governmental interest implicated. *See Resident Action Council*, 177 Wn.2d at 434. Thus, the PRA's exemptions are concerned not with where the information originated, but with the privacy right or government interest implicated by the type of information. *See Resident Action Council*, 177 Wn.2d at 432, 434.

With this principle in mind, we decline to hold that the protections of the PRA's UHCIA exemption disappear when health care information is held by an agency, such as the County, rather than a health care provider. Such an interpretation defeats the purpose of PRA exemptions by protecting an individual's privacy interest in health care information only for as long as the information is held by a health care provider or its assistant, agent, or employee. *See Resident Action Council*, 177 Wn.2d at 432, 434. This interpretation is also consistent with the UHCIA exemption's language; the exemption applies to "public inspection and copying of health care information of patients." Former RCW 42.56.360(2).

Our interpretation is supported by Supreme Court precedent interpreting the PRA's UHCIA exemption; in *Prison Legal News*, the court held that the UHCIA's health care exemption prohibits the disclosure of "'health care information'" without the patient's written consent. 154 Wn.2d at 644. In doing so, the court discussed only two requirements for information to constitute

"health care information": patient identification and information about the patient's health care.[14] *See Prison Legal News*, 154 Wn.2d at 644-45. Thus, *Prison Legal News* buttresses our conclusion that what matters for the PRA's UHCIA exemption to apply is not the information's *holder*, but the information's *nature.*

Division One adopted a similar interpretation in *John Doe G.* There, the court noted that "[a]lthough RCW 70.02.020(1) applies only to 'a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider,'" the PRA's UHCIA exemption "incorporates RCW 70.02.020 into the PRA and thus restricts disclosures by" an agency. *John Doe G*, 197 Wn. App. at 620 n.32. Thus, the PRA's UHCIA exemption restricted the Department of Corrections (DOC) from disclosing evaluations, although the DOC was "likely . . . not" a health care provider or its agent, assistant, or employee. *John Doe G*, 197 Wn. App. at 620 n.32.

Finally, our holding is consistent with the UHCIA's express purpose. The UHCIA's legislative findings state that "[i]t is the public policy of this state that a patient's interest in the proper use and disclosure of the patient's health care information survives *even when the information is held by persons other than health care providers*." RCW 70.02.005(4) (emphasis added). For these reasons, we hold that the health care information in the evaluations is exempt from disclosure under the PRA, even though the information is held by the County.

---

[14] As discussed, the SSOSA and SSODA evaluations both identify a patient—the offender—and contain information about the patient's health care.

e.     INAPPLICABILITY OF *KOENIG* AND CONCLUSION

The County next argues that *Koenig* controls and holds that SSOSA evaluations must be provided pursuant to a public records request. This argument lacks merit.

In *Koenig*, our Supreme Court considered whether SSOSA evaluations fell within the investigative records exemption to the PRA. 175 Wn.2d at 840. The majority held that to be exempt as investigative records, the evaluations had to be "investigative in nature; . . . compiled by an investigative, a law enforcement, or a penology agency; and . . . essential to law enforcement or essential to the protection of privacy." *Koenig*, 175 Wn.2d at 843. The majority further held that the evaluations failed the first part of the test because they were not investigative and thus did not reach "whether these documents are essential to effective law enforcement or for the protection of any individual's right to privacy." *Koenig*, 175 Wn.2d at 849.

Thus, the County is wrong that *Koenig* mandates that SSOSA evaluations be disclosed; rather, *Koenig* holds that SSOSA evaluations are not exempt as *investigative records*. 175 Wn.2d at 840. *Koenig* did not address the PRA's UHCIA exemption because the parties did not argue that the SSOSA evaluations fell within that exemption. 175 Wn.2d at 867 n.4 (J. J.M. Johnson, dissenting). Further, although Justice J.M. Johnson's dissent discussed the UHCIA exemption, it did so tangentially, to bolster its conclusion that exemption of the evaluations was essential to the protection of privacy. *Koenig*, 175 Wn.2d at 866-67 (J. J.M. Johnson, dissenting). Thus, the majority did not reject a theory that the SSOSA evaluations were exempt under other provisions of the PRA, as the County implies.

For the reasons discussed, we hold that the SSOSA and SSODA evaluations fall within the UHCIA's prohibition against disclosure of "health care information" about a "patient" and thus

are exempted from disclosure under the PRA. *See* RCW 70.02.020(1). *Koenig* does not compel a different outcome. Accordingly, we hold that the trial court did not err when it concluded that the unredacted SSOSA and SSODA evaluations are exempt from disclosure under the PRA, former RCW 42.56.360(2).

2.    OTHER PERMANENT INJUNCTION REQUIREMENTS

Zink briefly argues that the trial court erred when it concluded that disclosure would substantially and irreparably harm the class members and would not be in the public interest. She claims that the evaluations are of great importance to the public "in determining whether our courts are following our laws and sentencing requirements for sex offenders." Reply Br. of Appellant at 18. We disagree.

An injunction is appropriate under the PRA's injunction statute where the trial court concludes that an exemption applies and that the disclosure would not be in the public interest and would substantially and irreparably damage a person. RCW 42.56.540; *Yakima Herald-Republic*, 170 Wn.2d at 808.

Here, the John Does submitted numerous, detailed declarations explaining that the evaluations contained extremely personal, sensitive information that the John Does provided in confidence. The declarations also showed that the evaluations' disclosure would not be in the public interest because disclosure would result in sex offenders being less forthcoming during evaluations, resulting in less effective treatment, and would harm not only the offenders, but also the offenders' families and others identified in the evaluations.[15]

---

[15] In response, Zink submitted news articles about sex offenders, some of whom had received SSOSAs and one of whom had violated his SSOSA by failing to report, and a variety of other documents related to sex offender registration records requests.

When the trial court granted the John Does' summary judgment motion, it found that the John Does' declarations were "uncontested" and provided evidence of the substantial and irreparable harm of unredacted disclosure and that "the record establishe[d] that unredacted disclosure would not be in the public interest." CP at 658. Thus, the trial court concluded that the John Does were entitled to injunctive relief because the records at issue pertained to the class and were exempt from disclosure and because unredacted disclosure would not be in the public interest and would substantially and irreparably harm the class members.

Zink fails to explain how the trial court's conclusion, based on the John Does' declarations, that unredacted disclosure would substantially and irreparably harm the class members and would not be in the public interest was wrong. Notably, Zink does not claim that the trial court's finding that the Does' records were "uncontested" evidence was erroneous. Rather, the extent of Zink's argument is her conclusory, unsupported statement in her reply brief that "SSOSA evaluation[s] are of great importance to the public in determining whether our courts are following our laws and sentencing requirements for sex offenders." Reply Br. of Appellant at 18. We hold that the trial court properly concluded that the John Does had met their burden to show substantial and irreparable harm and that disclosure was not in the public interest.

The trial court properly concluded that unredacted SSOSA and SSODA evaluations were exempt under the PRA's UHCIA exemption and that their unredacted disclosure would not be in the public interest and would result in substantial and irreparable harm. Thus, we affirm the trial court's order granting summary judgment and a permanent injunction.

### D. OTHER STATUTORY ARGUMENTS

#### 1. SENTENCING REFORM ACT—PROSECUTORIAL STANDARDS

Zink further contends that the SRA's prosecutorial standards, RCW 9.94A.475 and RCW 9.94A.480(1), require that evaluations be maintained as public records and in the prosecuting attorney's office so that the trial court erred as a matter of law when it granted summary judgment.[16] This argument fails.

RCW 9.94A.401 to .480 contains "prosecutorial standards" that are "intended solely for the guidance of prosecutors [and] are not intended to . . . create a right or benefit, substantive or procedural, enforceable at law by a party in litigation with the state." RCW 9.94A.401. Thus, Zink cannot rely on these statutes to compel disclosure of the evaluations, which are otherwise exempted from disclosure under the PRA. Zink's argument does not show that the SRA's prosecutorial standards require the SSOSA and SSODA evaluations' disclosure.

#### 2. CRIMINAL RECORDS PRIVACY ACT

Zink next argues that the evaluations must be released under the CRPA, ch. 10.97 RCW, because they are "conviction records," subject to dissemination without restriction, so that the trial court erred when it granted summary judgment for the John Does. RCW 10.97.030(3), .050(1). Underlying Zink's argument is her contention that the evaluations contain "[c]riminal history information" and thus are subject to disclosure in their entirety. We disagree.

---

[16] RCW 9.94A.475 provides that for certain felonies, "[a]ny and all recommended sentencing agreements or plea agreements and the sentences for any and all felony crimes shall be made and retained as public records." RCW 9.94A.480(1) provides for judgment and sentencing documents to be kept by the sentencing judge and prosecuting attorney's office.

Conviction records, which "may be disseminated without restriction," RCW 10.97.050(1), are a type of "criminal history record information relating to an incident which has led to a conviction or other disposition adverse to the subject." RCW 10.97.030(3). The CRPA provides that "[n]othing in . . . chapter 42.56 RCW [the PRA] precludes dissemination of *criminal history record information*, including nonconviction data, for the purposes of this chapter." RCW 10.97.140 (emphasis added). Thus, the CRPA governs dissemination of criminal history record information, which is defined as

> information contained in records collected by criminal justice agencies, other than courts, on individuals, *consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations, or other formal criminal charges*, and any *disposition arising therefrom*, including acquittals by reason of insanity, dismissals based on lack of competency, sentences, correctional supervision, and release.
> The term includes any issued certificates of restoration of opportunities and any information contained in records maintained by or obtained from criminal justice agencies, other than courts, which records provide *individual identification of a person together with any portion of the individual's record of involvement in the criminal justice system as an alleged or convicted offender*.

RCW 10.97.030(4) (emphasis added).

Accordingly, "'[c]riminal history record information'" is essentially identifiable descriptions of offenders coupled with notations of formal criminal charges and the disposition arising therefrom. *See* RCW 10.97.030(4); *accord Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 422, 259 P.3d 190 (2011). Even if we agree with Zink that the evaluations likely contain some "criminal history record information," other information that the evaluations necessarily contain falls outside that definition.

For instance, SSOSA and SSODA evaluations must include an assessment of the offender's problems and alleged deviant behaviors, the offender's social and employment situation, and a

21

proposed treatment plan. RCW 9.94A.670(3); RCW 13.40.162(2). Further, SSOSA evaluations must include descriptions of specific activities that are precursors to offenses, such as viewing pornography or using controlled substances. RCW 9.94A.670(3)(b)(v). WAC 246-930-320, providing "[s]tandards for assessment and evaluation reports," creates a laundry list of other details that evaluations must include, such as the offender's "(ii) . . . sexual history," "patterns of sexual arousal/preference/interest," prior treatment, alcohol and drug abuse, stress, mood, sexual patterns, use of pornography, social and environmental influences, relationships, employment, education, family history, and mental health functioning. WAC 246-930-320(2)(e).

This list of information that *must* be contained in an evaluation exceeds the CRPA's definition of criminal history: "information . . . consisting of identifiable descriptions and notations of . . . formal criminal charges, and any disposition arising therefrom" and including "information contained in records [that] provide individual identification of a person together with any portion of the individual's record of involvement in the criminal justice system as an alleged or convicted offender." RCW 10.97.030(4).

We decline to hold that simply because an evaluation may contain criminal history information, then necessarily the entire evaluation becomes subject to disclosure under the CRPA. Merely because the evaluations may contain information describing an offender and noting formal criminal charges and their disposition does not convert other information about an offender, such as alleged deviant behaviors, social and employment situation, precursor activities, sexual history, sexual preferences, family and social relationships, and mental health functioning, into criminal history information. We hold that Zink fails to show that the unredacted evaluations are subject to disclosure under the CRPA.

22

## II. USE OF PSEUDONYMS

Zink contends that the John Does should not have been allowed to proceed under pseudonyms because CR 4(b)(1)(i), 10(a), and 17(a) operate to bar them from proceeding under pseudonyms. Further, Zink argues that the trial court erred when it ruled that allowing the plaintiffs to proceed under pseudonyms did not amount to sealing the record, implicating Zink's right to the open administration of justice under article I, section 10 of the Washington Constitution[17] and thus did not require conducting an *Ishakawa* analysis. We hold that Zink waived her argument.

We do not consider arguments first raised on review unless, as relevant here, a party claims manifest error affecting a constitutional right. RAP 2.5(a)(3). To show manifest error affecting a constitutional right, the appellant must identify that the error is of constitutional magnitude and resulted in actual prejudice—practical and identifiable consequences in the trial court. RAP 2.5(a)(3); *In re Adoption of K.M.T.*, 195 Wn. App. 548, 567, 381 P.3d 1210 (2016), *review denied*, 187 Wn.2d 1010 (2017).

Here, Zink, who was named as a defendant in the John Does' complaint, did not file a motion opposing the John Does' request to proceed under pseudonyms and did not appear at the hearing on that request. At the hearing, the trial court noted that Zink was aware of the hearing, understood court filing procedures, and had nevertheless chosen not to appear. The County did not oppose the John Does' request to proceed under pseudonyms. Accordingly, Zink has waived her argument regarding the use of pseudonyms unless she claims manifest error affecting a constitutional right. RAP 2.5(a)(3).

---

[17] Article I, section 10 provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." Thus, we presume that court records will be made open and available for public inspection. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005).

Arguably, Zink has alleged an error of constitutional magnitude—she claims that the trial court's decision to allow the plaintiffs to proceed under pseudonyms implicated her right to the open administration of justice. *See K.M.T.*, 195 Wn. App. at 567. However, to preserve her claim under RAP 2.5(a)(3), Zink must show further that the asserted error had practical and identifiable consequences in the trial court. *See K.M.T.*, 195 Wn. App. at 567. This, Zink is unable to do.

Zink claims that she was prejudiced by the use of pseudonyms because the trial court could not verify that the offenders were interested parties—people "named in the record[s] or to whom the record[s] specifically pertains"—without knowing the offenders' identities. RCW 42.56.540. But this argument lacks merit: although the John Does' names were unknown, it was clear that they were level I sex offenders and that they were named in registration records that Zink sought to have disclosed. Zink cannot show that allowing the John Does to proceed under pseudonyms had practical and identifiable consequences. *See K.M.T.*, 195 Wn. App. at 567. Accordingly, we hold that Zink waived her challenge to the trial court's decision to allow the John Does to proceed under pseudonyms.

### III. CLASS CERTIFICATION

Finally, Zink argues that the trial court abused its discretion when it certified the class. Zink claims that a class action improperly broadens the PRA, RCW 42.56.540, which provides for a person *named in a record* to bring a suit enjoining the release of that record. Again, we hold that Zink waived her class certification argument.

Zink failed to oppose the John Does' class certification motion or, as discussed, to appear at the hearing on the class certification motion and request to proceed under pseudonyms. The County did not oppose the John Does' request to proceed under class certification. Neither does

No. 48000-0-II

Zink allege a constitutional error or other error that may first be raised in the appellate court. *See* RAP 2.5. Thus, we hold that Zink waived her class certification argument.

### IV. APPELLATE ATTORNEY FEES

Of the parties, only Zink requests an award of her appellate attorney fees should she substantially prevail. As discussed, Zink's arguments on appeal all either fail or have been waived. Accordingly, Zink does not substantially prevail, and we decline to award Zink her appellate attorney fees.

The trial court properly granted summary judgment, permanently enjoined the disclosure of unredacted SSOSA and SSODA evaluations, certified the class, and granted the John Does' request to proceed by pseudonym.

We affirm.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.

25