# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOHN DOE P; JOHN DOE Q; JOHN DOE R; and JOHN DOE S, as individuals and on behalf of others similarly situated, | No.  48000-0-II |
| Respondents, | |
| v. | UNPUBLISHED OPINION AFTER REMAND FROM THE WASHINGTON SUPREME COURT |
| THURSTON COUNTY, a municipal organization, and its departments the THURSTON COUNTY PROSECUTING ATTORNEY, and THURSTON COUNTY SHERIFF, | |
| Respondents, | |
| DONNA ZINK, a married woman, | |
| Appellant. | |

JOHANSON, P.J.  —  In 2014, Donna Zink submitted a Public Records Act (PRA)[1] request for level one sex offenders' records held by Thurston County.  The John Does, representing a class of level one offenders whose records were among those requested, sued the County to prevent the

---

[1] Ch. 42.56 RCW.

records' release and obtained summary judgment and a permanent injunction barring the release of requested unredacted level one records.

After our opinion in *John Doe P v. Thurston County*,[2] the Supreme Court decided *John Doe G v. Department of Corrections*,[3] accepted review of *John Doe P*, and remanded it to us for reconsideration in light of *John Doe G*. On remand from our Supreme Court, we reverse *John Doe P*'s holding that unredacted special sex offender sentencing alternative (SSOSA)[4] evaluations are exempt from disclosure but hold that unredacted special sex offender disposition alternative (SSODA)[5] evaluations are exempt from disclosure. Accordingly, the portion of the superior court's summary judgment ruling exempting unredacted SSOSA evaluations from disclosure is reversed. We also reconsider our holding that Zink waived her pseudonym argument in light of the public's public trial right and reverse the superior court's ruling allowing the offenders to proceed under pseudonyms.[6]

---

[2] 199 Wn. App. 280, 399 P.3d 1195 (2017).

[3] 190 Wn.2d 185, 410 P.3d 1156 (2018).

[4] RCW 9.94A.670.

[5] RCW 13.40.162.

[6] The remaining, unaffected holdings from *John Doe P* are that the superior court erred when it enjoined registration records' release under former RCW 4.24.550 (2011), that the superior court properly determined that there were no genuine issues of material fact that the Does had satisfied RCW 42.56.540's requirements to issue a permanent injunction, that the prosecutorial standards of the Sentencing Reform Act of 1981, ch. 9.94A RCW, and the Washington State Criminal Records Privacy Act, ch. 10.97 RCW, did not otherwise require evaluations' disclosure, and that Zink waived her class certification arguments. *John Doe P*, 199 Wn. App. at 283, 299, 300-01, 304-05.

FACTS

The facts are set forth in *John Doe P*. They are referred to herein only as necessary.

In 2015, the Does filed a class action complaint to prevent the County from disclosing level one sex offender registration records and SSOSA/SSODA evaluations. They also requested permission to proceed under pseudonyms, a request that Zink did not oppose.

The superior court granted the Does' motion to proceed under pseudonyms. In its written order, the superior court did not apply the *Ishikawa*[7] factors. Because it found that the Does' interest in proceeding anonymously outweighed the public interest in their names and because this was the least restrictive means to protect the Does' interests, the superior court granted the Does' motion. The superior court also ruled that the Does had satisfied CR 23 and certified the class.

The Does then moved for summary judgment and a permanent injunction barring the requested level one offender records' release. The superior court granted the Does' motion. In doing so, the superior court ruled that (1) former RCW 4.24.550, regarding public notification, was an "other statute" exemption to the PRA that barred evaluations' and registration forms' disclosure, (2) the Uniform Health Care Information Act (UHCIA)[8] exemption to the PRA barred the evaluations' disclosure, (3) ch. 13.50 RCW, regarding juvenile records, was an "other statute" exemption to the PRA barring SSODA evaluations' disclosure, and (4) there was no genuine dispute of material fact that disclosure would not be in the public interest and would substantially

---

[7] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

[8] Ch. 70.02 RCW.

and irreparably harm the class members. The superior court did not rule on whether redacted records could be disclosed.

Zink appealed, and we affirmed the superior court's rulings exempting unredacted SSOSA/SSODA evaluations from disclosure. *John Doe P*, 199 Wn. App. at 292. We reversed the superior court's ruling exempting registration records from disclosure under former RCW 4.24.550. *John Doe P*, 199 Wn. App. at 283. And we held that Zink had waived her arguments that the superior court erred when it certified the class and when it allowed the offenders to proceed under pseudonyms. *John Doe P*, 199 Wn. App. at 303, 305.

## ANALYSIS

### I. THE PRA'S UHCIA EXEMPTION DOES NOT APPLY TO SSOSA/SSODA EVALUATIONS

In light of *John Doe G*, we reconsider our holding that unredacted SSOSA/SSODA evaluations are exempt under the PRA's UHCIA exemption. *John Doe P*, 199 Wn. App. at 292. We hold that under *John Doe G*, unredacted SSOSA/SSODA evaluations are not exempt from disclosure under the PRA's UHCIA exemption.

### A. SSOSA/SSODA EVALUATIONS

A SSOSA is a sentencing alternative that allows a first-time sex offender's felony sentence to be suspended if the offender meets certain statutory criteria. *John Doe G*, 190 Wn.2d at 192. To obtain a SSOSA, the court may order an offender to undergo an examination to determine the offender's amenability to treatment. RCW 9.94A.670(3). The sentencing court uses the resulting evaluation to determine whether to impose a SSOSA. *John Doe G*, 190 Wn.2d at 194. Because a SSOSA evaluation is a forensic examination made to aid a sentencing court in determining whether

to impose a SSOSA, SSOSA evaluations are not exempt from disclosure under the UHCIA as a PRA exemption. *John Doe G*, 190 Wn.2d at 197.

Like SSOSAs, but for juvenile offenders, SSODAs are sentencing alternatives for juveniles facing a first-time adjudication for certain sex offenses. *State v. Sanchez*, 177 Wn.2d 835, 840, 306 P.3d 935 (2013). The sentencing court uses a SSODA evaluation to determine whether a SSODA will benefit the juvenile offender and the community. RCW 13.40.162(3).

By statute, SSODA evaluations must include the same information as SSOSA evaluations, such as a proposed treatment plan. RCW 13.40.162(2)(a)-(b); *see* RCW 9.94A.670(3). The same WAC provision governs the required contents of both SSOSA and SSODA evaluations. WAC 246-930-320(2)(f)(i), (ii); *see* WAC 246-930-010(9).

## B. SSOSA EVALUATIONS NOT EXEMPT

A SSOSA evaluation "is not directly related to health care" so that SSOSA evaluations do not contain health care information and accordingly do not fit within the PRA's exemption incorporating the UHCIA. *John Doe G*, 190 Wn.2d at 194. Thus, we reverse the superior court's ruling that SSOSA evaluations were exempt from disclosure under the UHCIA as a PRA exemption.

## C. SSODA EVALUATIONS NOT EXEMPT

*John Doe G* did not address SSODA evaluations. Nevertheless, *John Doe G*'s reasoning about SSOSA evaluations applies to SSODA evaluations.

In *John Doe G*, the critical features making SSOSA evaluations not directly related to a patient's health care were,

> SSOSA evaluations are made for the purpose of publishing the results to the court. When a SSOSA is requested, the court orders a SSOSA evaluation and uses

the evaluation to assess whether the offender should be granted an alternative sentence. RCW 9.94A.670(3)-(4). . . .

. . . In a SSOSA evaluation, the court must decide whether the offender is amenable to treatment and whether a SSOSA will serve public safety interests and the penological goal of rehabilitation. . . .

. . . .

. . . [T]he treatment plan must . . . include "[r]ecommendations for specific behavioral prohibitions, requirements and restrictions on living conditions, lifestyle requirements, and monitoring by family members and others that are necessary to the treatment process and community safety." WAC 246-930-320(2)(g)(iii).

190 Wn.2d at 194-97 (last alteration in original).

SSODA evaluations share these same critical features. As with a SSOSA evaluation, which applies to adult offenders, the sentencing court uses the SSODA evaluation, which applies to juvenile offenders, to make its decision whether to impose a sentencing alternative. *See* RCW 13.40.162(2), (3). And like a SSOSA evaluation, a SSODA evaluation informs the sentencing court's decision by providing information about whether the community will benefit from a sentencing alternative and whether the offender is amenable to treatment. RCW 13.40.162(2), (3); *see* RCW 9.94A.670(4). Further, the statutorily required contents of a SSODA evaluation contained in RCW 13.40.162(2) are nearly identical to the statutorily required contents of a SSOSA evaluation in RCW 9.94A.670(3). Finally, WAC 246-930-320(2)(g)(iii), setting forth the requirements for a treatment plan, applies equally to SSOSA and SSODA evaluations. WAC 246-930-010(9).

Because juvenile SSODA evaluations share the critical features making SSOSA evaluations not "health care information" for UHCIA purposes, *John Doe G*'s holding also applies to SSODA evaluations. Thus, in light of *John Doe G*, we reverse our holding that unredacted SSOSA/SSODA evaluations are exempt from disclosure under the PRA's UHCIA exemption.

Because the superior court also ruled that unredacted SSODA evaluations are exempt under a separate PRA exemption, ch. 13.50 RCW as an "other statute" exemption, we must also consider whether this ruling was correct.

## II. UNREDACTED SSODA EVALUATIONS ARE EXEMPT FROM DISCLOSURE UNDER CH. 13.50 RCW AS "OTHER STATUTE" EXEMPTION TO PRA

On appeal, Zink does not dispute that records governed by ch. 13.50 RCW would be exempt from PRA production. Rather, she argues that court-ordered SSODA evaluations are part of the juvenile court file and, therefore, they must be available for public inspection. The County argues that SSODA evaluations are juvenile records governed by ch. 13.50 RCW and not found within the official juvenile court file, so that unless redacted,[9] they could not be disclosed under the PRA. The Does agree with the County that SSODA evaluations are exempt from disclosure under ch. 13.50 RCW as an "other statute" exemption. We agree with the County and the Does that unredacted SSODA evaluations are exempt from disclosure and affirm the superior court's ruling in this regard.

*John Doe G* did not address ch. 13.50 RCW. It is well settled that ch. 13.50 RCW is an "other statute" exemption that bars the release of juvenile justice and care records. *See Wright v. Dep't of Soc. & Health Servs.*, 176 Wn. App. 585, 597-98, 309 P.3d 662 (2013).[10]

---

[9] The superior court declined to rule on whether redacted records could be released, and redaction is not at issue on appeal.

[10] In *Wright*, we held that the PRA did not apply to a request for a recorded interview because the interview was a record maintained in a juvenile's social file and was thus governed by ch. 13.50 RCW. 176 Wn. App. at 597-98; *see also Anderson v. Dep't of Soc. & Health Servs.*, 196 Wn. App. 674, 684, 384 P.3d 651 (2016) (the language in ch. 13.50 RCW creates an exception to PRA disclosure), *review denied*, 188 Wn.2d 1006 (2017); *In re Dependency of K.B.*, 150 Wn. App. 912, 923, 210 P.3d 330 (2009) (ch. 13.50 RCW provides the exclusive process, including sanctions, for

For records related to the commission of juvenile offenses, "[t]he official juvenile court file of any alleged or proven juvenile offender shall be open to public inspection, unless sealed pursuant to RCW 13.50.260." RCW 13.50.050(2). But "[a]ll records other than the official juvenile court file are confidential and may be released only as provided in [ch. 13.50 RCW], RCW 13.40.215[11] and 4.24.550.[12]" RCW 13.50.050(3). None of which apply here. A SSODA evaluation does not fit within the definition of an "official juvenile court file" in former RCW 13.50.010(1)(b) (2014),[13] so that a SSODA evaluation is subject to the general rule that all juvenile records related to the commission of juvenile offenses and not in the official juvenile court file must be kept confidential. *State v. A.G.S.*, 182 Wn.2d 273, 275, 340 P.3d 830 (2014).

Recognizing that *A.G.S.* addresses her argument, Zink argues that *A.G.S.*'s holding applies only to SSODA evaluations paid for by an offender and not to court-ordered SSODA evaluations. Zink accurately recognizes that in *A.G.S.*, the State and the juvenile offender ordered separate evaluations and it was disclosure of the juvenile's, not the State's, evaluation that was at issue. 182 Wn.2d at 275-76.

---

obtaining juvenile justice and care agency records); *Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 91-92, 93 P.3d 195 (2004) (ch. 13.50 RCW is an "other statute" exemption).

[11] RCW 13.40.215 creates community notification provisions for juveniles found to have committed a violent offense, a sex offense, or stalking.

[12] Former RCW 4.24.550 governs risk assessment and notification when sex offenders are released from confinement. *See also Sanchez*, 177 Wn.2d at 848 (RCW 13.50.050 incorporates an "exception for the release of SSODA evaluations to local law enforcement for the purpose of making sex offender risk assessments.").

[13] In 2016, the legislature amended the definition of "official juvenile court file" in RCW 13.50.010. LAWS OF 2016, ch. 93, § 2. We rely upon the definition used in *A.G.S.* and in effect when Zink made her public records request.

Nevertheless, *A.G.S.*'s holding applies to all SSODA evaluations, regardless of whether the evaluation is court ordered or paid for by the offender. In *A.G.S.*, the reason that SSODA evaluations were not part of the official juvenile court file was "the nature of the document itself." 182 Wn.2d at 277. A SSODA evaluation is not a "petition or information, motion, memorandum, brief, finding of the court, or court order. Put simply, it is not a court document. *Rather, it is a psychological report that includes a treatment plan.*" *A.G.S.*, 182 Wn.2d at 278 (emphasis added). *A.G.S.* discussed SSODA evaluations in general, regardless of whether the SSODA was requested by the court or a party. 182 Wn.2d at 276-77. Thus, *A.G.S.* relied on the nature of the evaluation, not the identity of the requestor, and accordingly the difference in the requestor's identity is not a persuasive reason to abandon *A.G.S.*'s holding. 182 Wn.2d at 277.

We follow *A.G.S.*, which holds that SSODA evaluations are not part of the official juvenile court file. *A.G.S.*, 182 Wn.2d at 275. The superior court properly ruled that unredacted SSODA evaluations in the County's possession were records related to the commission of juvenile offenses not found within the official juvenile court file and accordingly were confidential.

### III. RCW 42.56.540 AND SSOSA/SSODA EVALUATION CONCLUSION

In *John Doe P*, we also held that there was no genuine issue of material fact that the Does had satisfied RCW 42.56.540, requiring showings of lack of public interest and harm before issuing a PRA injunction. 199 Wn. App. at 298-99. We discussed the Does' evidence that SSOSA/SSODA evaluations' disclosure would not be in the public interest and would result in substantial and irreparable harm. *John Doe P*, 199 Wn. App. at 299-300. This holding is unaffected by the fact that now, only unredacted SSODA evaluations' release is at issue. We

accordingly do not reconsider our holding that unredacted disclosure of the exempt evaluations—now, only SSODA evaluations—meets the criteria from RCW 42.56.540.

In sum, we reverse our holding in *John Doe P* that unredacted SSOSA evaluations are exempt under the UHCIA exemption to the PRA. Thus, the superior court must allow release of SSOSA evaluations. However, we hold that unredacted SSODA evaluations are exempt under ch. 13.50 RCW as an "other statute" PRA exemption and that the superior court properly ruled that unredacted SSODA evaluations were exempt from disclosure.

## IV. ORDER ALLOWING OFFENDERS TO PROCEED UNDER PSUEDONYMS

We reconsider our holding that Zink waived her argument that the superior court erred when it allowed the Does to proceed under pseudonyms. *See John Doe P*, 199 Wn. App. at 303. We reach this argument's merits and reverse the superior court's ruling allowing the Does to proceed under pseudonyms.

### A. NOT WAIVED

"To determine whether to consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude and (2) the error is manifest." *In re Adoption of K.M.T.*, 195 Wn. App. 548, 567, 381 P.3d 1210 (2016), *review denied*, 187 Wn.2d 1010 (2017). "An error is manifest when the appellant shows actual prejudice": "practical and identifiable consequences in the trial court." *K.M.T.*, 195 Wn. App. at 567.

In *John Doe P*, we held that Zink failed to show manifest error affecting a constitutional right when the superior court allowed the offenders to proceed under pseudonyms without conducting an *Ishikawa* analysis. 199 Wn. App. at 303-04. Although Zink's argument related to her constitutional right to the open administration of justice, she failed to show that any error

related to this right had practical and identifiable consequences in the trial court. *John Doe P*, 199 Wn. App. at 304. She could not show practical and identifiable consequences because she did not need to know the offenders' names to know that they were named in the registration records. *John Doe P*, 199 Wn. App. at 304.

In *John Doe G*, the Supreme Court held that the convicted sex offenders' names in pleadings implicate article I, section 10 of the Washington Constitution and that redaction must meet the *Ishikawa* factors. 190 Wn.2d at 201. The consequences of pseudonymous litigation without redaction identified in *John Doe G* included the public's significant positive role in sentencing and redaction of public records without the public having an opportunity to object. 190 Wn.2d at 200-02. The consequences discussed in *John Doe G* are practicable and identifiable and occurred here, as well.

In light of *John Doe G* and its emphasis on the public's significant interest in having an opportunity to object before allowing sex offenders to proceed under pseudonyms, we reconsider our holding that Zink waived her pseudonym argument. Because under *John Doe G*, allowing the Does to proceed under pseudonyms without conducting an *Ishikawa* analysis had practical and identifiable consequences to the public's right to open courts under our state constitution, we reach the merits of Zink's argument.

B. PSEUDONYM ORDER

Here, the superior court's order granting permission to proceed under pseudonym is similar to that found insufficient in *John Doe G*. The superior court in this case did not apply the *Ishikawa* factors; instead, it ruled that the Does had demonstrated privacy violations and a significant risk of harm from disclosure of their identities. Further, the superior court ruled that there would be

no prejudice to the County and that the Does' interest in protecting their names outweighed the public interest in their names. The superior court also ruled that pseudonyms were the least restrictive means of protecting the Does' interests.[14]

Similarly, in *John Doe G*, the superior court did not include the *Ishikawa* factors in its written order and instead found that "Zink would not be prejudiced if the John Does were allowed to proceed in pseudonym and that the John Does' real names have little bearing on the public's interest in this case." 190 Wn.2d at 202. As the dissent points out there, and similar to this case, the superior court identified multiple privacy and safety concerns from disclosure of the Does' identities. *John Doe G*, 190 Wn.2d at 213-14 (Wiggins, J., dissenting). And the superior court's ruling reflected a balancing of the public interest in the offenders' names against the offenders' privacy interest. *John Doe G*, 190 Wn.2d at 214 (Wiggins, J., dissenting).

The Supreme Court's holding that the order in *John Doe G* was insufficient to justify allowing the offenders to proceed under pseudonyms applies to the similar superior court ruling here. *See* 190 Wn.2d at 202. In light of *John Doe G*, we reconsider our holding that Zink waived her argument related to allowing the Does to proceed under pseudonyms. We reverse the order granting permission to proceed under pseudonyms.

CONCLUSION

Accordingly, we reverse the superior court's summary judgment ruling that unredacted SSOSA evaluations are exempt from disclosure, we reverse the ruling allowing the Does to

---

[14] The superior court did say that it found "that there is sufficient evidence in the record to find for the *Ishikawa* factors if that was necessary." Verbatim Report of Proceedings (Jan. 23, 2015) at 16. However, the superior court did not analyze the *Ishikawa* factors on the record or in its written order. Crucially, the superior court did not offer anyone in the courtroom an opportunity to object, despite that *Ishikawa* requires providing such an opportunity. 97 Wn.2d at 38.

No. 48000-0-II

proceed under pseudonyms and we remand for further proceedings consistent with this opinion. We otherwise affirm our holdings in *John Doe P*, 199 Wn. App. 280.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

BJORGEN, J.

MELNICK, J.